20 233
82 617
20 233
83 574
20 233
86 102
20 233
87 147
20 233
98 101
20 234
101 670
20 233
109 25
20 233
a128 482

---

## STATE OF CALIFORNIA v. McGLYNN AND BUTLER.

A DECREE of the Probate Court, admitting a will to probate, not reversed by the appellate Court, is final and conclusive, and is not liable to be vacated or questioned by any other Court, either incidentally or by a direct proceeding for the purpose of impeaching it.

A will having been once admitted to probate, must, so long as the probate stands, be recognized and admitted in all courts to be valid.

In England, it is well settled by a long series of decisions, that the comprehensive jurisdiction exercised by Courts of Chancery in setting aside instruments obtained by fraud does not extend to wills, and that those Courts have no power to determine the validity of a will of either personal or real property.

Courts of Chancery in England, in their efforts to defeat fraudulent practices, have, in some cases, deprived parties of the benefit of the fraudulent will, by decreeing that such parties should hold the property under their will in trust for the parties who would have been entitled to it if such will had not been probated, but in all such cases they have disclaimed any power to set aside the will or the probate.

In the United States, the Courts have uniformly held that the principles established in England apply and govern the cases arising under the probate laws of this

16

State of California *v.* McGlynn.

country, and that whenever, in any State, the power to probate a will is given to a Probate or Surrogate's Court, the decree of such Court cannot be set aside or vacated by the Court of Chancery on the ground that it was obtained by fraud, or on any other ground.

The probating of a will is not a proceeding to decide a contest between parties, but a proceeding *in rem,* to determine the character and validity of an instrument affecting the title to property, and which it is necessary for the repose of society should be definitely settled by one judgment; and therefore the decree of probate is conclusive, not only upon the parties who may be before the Court, but upon all other persons and upon all Courts.

The danger which might be apprehended from holding as conclusive, upon so important a matter as the probate of a will, the decree of a single Court, and that not of the highest jurisdiction, is guarded against by the right of appeal to the Supreme Court, and by the statutory provision allowing the decision to be opened and the validity of the will to be again contested in the same Court by any one interested, within one year from the admission to probate.

Whether the exception in regard to probate decrees be founded in good reason or otherwise, it has become too firmly established to be disregarded; and at the present day it would not be a greater assumption to deny the general rule that Courts of Chancery may set aside judgments procured by fraud, than to deny the exception to that rule in the case of probate decrees.

In a proceeding commenced by the State in a District Court, for the purpose of setting aside a decree of the Probate Court establishing the validity of a will, it is not important to decide whether the period of one year fixed as the time within which persons interested may appear and contest the probate is a limitation which runs against the State; as the only effect of holding that it does not, would be to authorize the State to institute such proceeding in the Probate Court, but not to confer any new jurisdiction upon the District Court.

An injunction for the purpose of protecting property during litigation will not be allowed, where the complaint shows that the party seeking the injunction has no title to, or interest in, the property, and no claim to the ultimate relief sought by the litigation.

A law relating to the subject matter of an order made by the lower Court previous to its passage, will not affect the decision of the Supreme Court on an appeal from the order. The decision in the appellate Court must be whether the order was correct or erroneous at the time it was made.

An information having been filed on behalf of the State in the District Court, asking a decree that an estate of a certain deceased person had escheated to the State, an action was subsequently commenced in the same Court, and in the same behalf, in aid of the information, for the purpose of obtaining, with other relief, an injunction to prevent the dissipation of the property of the estate pending the litigation under the information. The complaint in the latter action showed affirmatively that an instrument purporting to have been the will of the deceased, but alleged in the complaint to have been a forgery, by which the property was devised to a person capable of taking and holding it, had been in due form admitted to probate and established as the will of the deceased by a decree of the Probate Court, which was still in force: *Held,*

State of California *v.* McGlynn.

on appeal from an order of the District Court granting the injunction, that the complaint was devoid of equity, and showed that the plaintiff was not entitled to the ultimate relief sought in either of the proceedings, and that as a consequence, there was no right to an injunction and that the order must be reversed.

The law upon a question does not become settled by the mere opinion of Judges unnecessarily expressed, but only by a decision of the point when being the ground, or at least one of the grounds, of a judgment.

When a case is sent back for new trial, it may be appropriate, though not strictly necessary for the decision of the question of a new trial, to give an opinion upon points that will arise in the Court below, and must be decided, to finally terminate the case; but an opinion will not, at the request of counsel, be expressed upon points not necessary to be decided, and an opinion upon which can have no effect upon the case in any stage of it.

APPEAL from the Fourth Judicial District.

This is an appeal from an order of the District Court, granting an injunction at the suit of the State against John A. McGlynn and A. J. Butler, executors of the last will and testament of D. C. Broderick, deceased.

The injunction restrains the executors from selling any portion of the estate under an order of the Probate Court heretofore made, requiring the executors to sell the same, or so much as shall be necessary to pay the debts and expenses of administration of the estate ; and also enjoins the executors from intermeddling in any manner with the affairs of the estate.

The sale enjoined was advertised for the thirtieth of November, 1861. On the twenty-ninth of November, 1861, the State filed an information through the Attorney General, Thomas H. Williams, Esq., on the relation of Frank M. Pixley, Esq., for an escheat of the estate, and on the same day filed a bill in equity for an injunction, in aid of the information. The substantial averments of the bill and answer are set forth in the opinion of the Court. The bill was not verified, and the denials of the answer, which was verified, were upon information and belief.

An order to show cause why the injunction should not issue was served on the morning of the sale, accompanied by a restraining order, and finally, on the thirty-first of December, 1861, the injunction was granted. From this order the appeal is prosecuted.

The proceedings in the Probate Court were as follows.

On the twentieth of February, 1860, the will was filed in the

Probate Court, with the petition of McGlynn and Butler, praying probate and letters testamentary.

The usual order for all persons interested, to appear at a certain time named and show cause why the will should not be admitted to probate, was made and duly published, returnable on the twelfth of March, 1860.

On that day, various persons appeared, by their respective counsel, and claimed to be heirs, and filed their objections in writing, contesting the will on the ground that it was false, simulated and a forgery.

On the same day, a commission was, by consent of all parties, ordered to be issued to New York city, to take the testimony of the subscribing witnesses to the will.

All the parties joined in the commission. Interrogatories and cross interrogatories were filed, and the case continued to the eighteenth of June, 1860, to await the return of the commission.

The commission was returned duly executed, and on the eighteenth of June, 1860, the hearing was commenced.

The petitioners and the contestants introduced in the Probate Court a large number of witnesses respectively, for and against the validity of the will.

The contest extended until the eighth of October, 1860. The testimony of a large number of witnesses, besides documentary evidence, was introduced, and after due consideration, on the eighth of October, 1860, the Probate Court admitted the will to probate as genuine, finding the charges of fraud and forgery to be unsupported by the proof.

Appeals were prosecuted to the Supreme Court, and duly dismissed; and the executors proceeded in the due course of administration, and finally the order of sale above mentioned was obtained to pay the established debts and expenses of administration.

The complaint and answer each contain a large number of affidavits bearing upon the question of the genuineness of the will, and at the hearing of the application for injunction, many additional affidavits on the same subject were introduced by both parties. Several of these affidavits go to show that one McDonnell, now residing in San Francisco, and his two sisters, residing in

State of California *v.* McGlynn.

Ireland, are first cousins to the deceased, and claim to be his heirs; and in the Supreme Court these alleged heirs were, by their attorney, heard in argument in opposition to the claim of the State.

The amendatory act concerning Escheated Estates, referred to in the opinion, was approved March 3d, 1862, and will be found in the laws of 1862, chap. 33, p. 27.

*Hoge and Wilson,* for Appellants.

As appears from an examination of the pleadings, this is not a bill of review; for such a bill must be filed in the same Court in which the original decree was rendered.

Neither is it a bill in equity to obtain a new trial in the Probate Court, or rehearing in that tribunal. It seeks no such relief. It contemplates no action in that Court in any event. It is an original bill in chancery, and its object is to set aside a judgment and decree of the Court of Probate, and all its orders following and carrying out that decree, for fraud, and to declare a will adjudged valid, and ordered to probate by that decree, fraudulent and void.

In other words, it seeks in the guise of a bill in equity in the District Court, to review and reverse the decrees and judgments of the Court of Probate in matters exclusively within the jurisdiction of that tribunal.

The bill is said to be filed in aid of a proceeding at law by information at the suit of the State, to declare the estate of the decedent, Mr. Broderick, an escheat.

The allegations of the bill are essentially the same as those of the information, and are intended to get rid of the solemn judgments of a competent tribunal, confessedly conclusive in the legal proceeding.

The bill is not verified, but it is claimed that, under the provisions of the Practice Act as to pleadings, this being a proceeding on behalf of the State, it is to be treated as a sworn bill.

We shall not stop to inquire into the correctness of this assumption, nor into the question of the right of the State to an injunction in aid of an information for an escheat in any case. It might, per-

haps, be contended with great force, that the remedies intended to be given to the State are all provided for in the escheat laws.

The Government is not in the position of an owner, and has no interest, except upon a failure of all other rights, when ascertained by a proceeding by information in the nature of an inquest of office. Until then, she has none of the rights or remedies of the ordinary owner, except as they may be given to her by the express provisions of the law.

But, however this may be, we think this proceeding cannot be maintained in any event upon principle or authority.

I.    The allegations of the bill are founded entirely upon information and belief.

It is well settled that such a bill, so sworn to, cannot be made the basis upon which to ask the interposition of a Court of equity by an injunction.

It is unnecessary to cite authorities to sustain a proposition which has become an elementary principle of chancery law and practice.

II.    The bill itself upon its face, and the answer and affidavits, show conclusively the existence of nonresident foreign heirs, claiming this whole estate as the next of kin to Mr. Broderick.    Nay, that they are even now prosecuting their claim in the Probate Court.

This is fatal to the case of the State.

The Act of 1856 suspends and postpones all claim upon the part of the State for five years.    That time is allowed the foreign heir within which to come in and maintain his rights.

The State has no interest, and no right to interfere by any proceedings until after five years have expired.    Even then the State can only proceed in the manner pointed out by the act for the sale of the property—the proceeds are to be paid into the treasury, and must remain there for another period of five years, within which the heir may still come in and present his claim.    Only after the expiration of this extended period does the right of the State begin to operate.    It is believed that the case of *The People* v. *Rogers*, reported in 13 Cal. 158, is conclusive on this proposition, and renders further argument unnecessary.    That case presented the precise

point involved in this, and determines the very question we are now discussing.

III.   This bill, under our Constitution and laws, cannot be maintained.

The Court of Probate has, by the Constitution and by the statute law, original and exclusive cognizance of wills and their probate. Its decisions on this subject are final and conclusive upon all Courts and upon all persons.

They can only be reviewed on appeal in the manner provided by law.   (Art. 6, secs. 6, 8, Const.; *Zander* v. *Coe*, 5 Cal. 230; *Castro* v. *Richardson*, 18 Id. 478 ; see the provisions of our Statute, *passim.*)

Nor does this doctrine militate in the least against the constitutional jurisdiction of the District Court.   As said by the Supreme Court in *Zander* v. *Coe :* The language of the Constitution, in distributing the judicial power among the several Courts, is almost identical when speaking of the District and the Probate Courts. The grant of power is the same in one case as in the other, and is equally exclusive in the one as in the other.   Each is necessarily a limitation upon the other.   Both are constitutional Courts.   Neither occupies a position of inferiority in relation to the other.   In their respective orbits they are independent.

The Probate Court, within its sphere, is not unequal to the District Court, and its decrees are subject to no review, except by the Court of last resort.

Such is the doctrine of *Zander* v. *Coe* and *Pond* v. *Pond*, 10 Cal. 495 ; and *Deck Estate* v. *Gherke*, 6 Id. 669.

No appeal lies from the Probate to the District Court.   The District Court has no appellate powers.

The decrees of the Probate Court in a matter within its exclusive cognizance cannot be reviewed by the District Court, under the guise of a bill in equity upon allegations of fraud.

This Court has decided that the Legislature cannot constitutionally give the District Court powers in their nature appellate over the decrees of the Probate Court.

The powers of the Probate Court cannot be taken away and given to another tribunal under any pretense.   Under similar con-

stitutional provisions, the Supreme Courts of Mississippi and Alabama have held in accordance with the decisions of this Court.  (2 How. [Miss.] 806–856 ; 7 Id. 147 ; 3 Id. 252 ; 32 Ala. 681.)

Upon authority, it is sufficiently apparent that a direct attempt by the Legislature to give to other Courts the jurisdiction which peculiarly belongs to the Probate Court by the Constitution, would be nugatory and void.  But in truth, no difficulty can grow out of the provisions of the Constitution in relation to the grant of jurisdiction to the District Court, because the probate of wills was never a subject of equity jurisdiction.  This will sufficiently appear in the course of this brief.  The·general grant of equity powers to the District Court by the Constitution could, therefore, never be construed to affect or take away the special grants to the Probate Court.

IV.  The District Court, as a Court of Chancery, has no jurisdiction of the subject matter of this bill, and no power to set aside the decree of the Court of Probate establishing the will in question, or to declare the will void for fraud or any other cause.

The doctrine is well settled in England, as the following English authorities clearly show : Archer y. Mosse, 2 Vernon, 8 ; Nelson v. Oldfield, 2 Id. 76 ; 3 Merivale, 71 ; Gingell v. Horne, 9 Simons, [16 E. Ch.] 544,·548–9 ; Kenrick v. Bransby, 3 Brown, P. C. 358 ; Lyon v. Beaver, 1 Turner & Russ. 63 [11 E. Ch. 39] ; Jones v. Jones, 7 Price Exch. 663 ; Jones v. Frost, Jacobs, 466 [4 E. Ch., Cond., 218] ; Pemberton v. Pemberton, 13 Vesey, 246 ; Duchess of Kingston's Case, 2 Ambler, 756 ; Allen v. Dundas, 3 D. & East. 131.

The American cases are still more clear and decisive.  Is is considered as well settled, that a will cannot be set aside in equity on the ground of fraud.

The decree of the Probate Court establishing a will is conclusive. It operates in rem; it is binding and conclusive in all Courts and places ; all the world are parties.  A decree setting up a will operates upon the thing itself, defines and creates its status, and the judgment binds and concludes the whole world.

The authorities are overwhelming to this proposition.  Indeed, we have not found a single case to the contrary.  Not one of the

cases cited by the counsel on the other side at all questions the doctrine, while many of them directly affirm it. (*Gaines* v. *Chew*, 2 How. [U. S.] 645–6; *Burger* v. *Hill*, 1 Bradford, 373 ; *Whitfield* v. *Hurst*, 3 Iredell Eq. 242; *Muir* v. *Trustees, &c.*, 3 Barb. Ch. 481; *Tibbatts* v. *Berry*, 10 B. Monroe, 474–5 ; *Tompkins* v. *Tompkins*, 1 Story, 547 ; *Laughton* v. *Atkins*, 1 Pick. 547–8; *Tarver* v. *Tarver et al.*, 9 Pet. 174; *Goùld* v. *Goùld*, 3 Story, 536–7 [cited by Respondent] ; *Gelston* v. *Hoyt*, 3 Wheaton, 246 ; *Bogardus et al.* v. *Clark*, 1 Edw. Ch. 266 ; Same case on appeal, 4 Paige, 625 ; *Clarke* v. *Fisher*, 1 Id. 176 ; *Colton* v. *Ross*, 2 Id. 398–9 ; Dayton on Surrogates, 168; *Deslonde & James* v. *Darrington's Heirs*, 29 Ala. 95; *Ballou et al.* v. *Hudson et al.*, 13 Gratt. 674, 682; *Coulter's Executors* v. *Bryan*, 1 Id. 76; *Hunt et al.* v. *Acr et al.*, 28 Ala. 593; *Wills* v. *Spraggins*, 3 Gratt. 567, 574; *Parker's Executors* v. *Brown's Executors*, 6 Id. 554 ; *Robinson* v. *Allen et al.*, 11 Id. 787; *Sterns* v. *Sterns*, 25 Miss. 531–2; *Sever* v. *Russell*, 4 Cushing, 517; *Jennison* v. *Hapgood*, 7 Pick. 7; *Adams* v. *De Cook et al.*, 1 McAllister, 253 ; *Fortune* v. *Buck et al.*, 23 Conn. 8; *Nalle* v. *Fenwicke*, 4 Randolph, 588–9; *Schultz* v. *Schultz et al.*, 10 Gratt. 368, 377; *Wells' Will*, 5 Littell, 273; *Hardy* v. *Hardy*, 26 Ala. 524; *Ingram* v. *Ingram*, 2 Texas, 590 ; *Roberts* v. *Stewart et al.*, 2 Swan, 165 ; *Harrison et al.* v. *Morton & Brown, Executors*, 2 Id. 461; 1 Jarman on Wills, ch. 9, p. 210; Story's Eq. Pl., Secs. 474, 490, 716, 786–8; 2 Ala. 234.

Indeed, authorities might be cited without limit in support of the doctrine we are contending for.

The cases cited by the counsel for the State both from our own and other Courts, as to the powers of a Court of Chancery in relation to opening accounts of executors and administrators settled in the Probate Court, have no application to the proposition we are discussing. Accounts were subjects of original chancery jurisdiction; the probate of wills never was. This Court has limited the doctrine to the precise case of accounts, basing themselves upon the old cases, and have intimated strong doubts of its correctness as an original question under our Constitution and laws. (See the case of *Deck et al.* v. *Gerke, Administrator, et al.*, 12 Cal. 433.)

The precise distinction we contend for is expressly held in the case of *Gould* v. *Gould,* cited by the counsel from 3 Story's Rep. 536–7.

The authorities which we cite are full and conclusive of the whole question.

V.   By the express provisions of our statute, the decree of the Probate Court establishing the validity of the will, after the expiration of one year from the date of its rendition, becomes forever conclusive and binding upon all the world, and can never again be questioned in any Court or in any place.   (Wood's Dig. 392, ch. 2, Proof of Wills, &c.)

The proceedings to prove a will, being *in rem,* all interested are parties, and may in fact make themselves so.

By our law, publication brings in the State, as well as all others interested.

Any one interested appearing and contesting the probate, the contest enures to the benefit of all.

The State can be in no better position than the heirs.   If the heir is bound by the decree, surely the State must be.

Would it be pretended that any heir could now file and maintain such a bill as this?

Under our system, the whole subject of the probate of wills is given to the Probate Court.   No controversy as to their validity is provided for, or can be had in any other tribunal.   Every possible case which might invoke the aid of a Court of Equity is provided for in the Probate Act.   Our statute, for the very purpose of giving an opportunity for a reinvestigation upon allegations of fraud, or otherwise, allows one year.   It must be done, if at all, within that time.   There must be some period when litigation of a will must end.   Our Legislature has thought proper to fix one year as the limit beyond which there shall be no further question of the validity of the will and of its probate.

Other States have fixed different periods for the same object, and have permitted by express legislative provisions, an appeal to a Court of Chancery within a given time.   After the expiration of that time, no further agitation of the subject is permitted.   Such has been the decision wherever the question has been made.

State of California *v.* McGlynn.

(*Hardy* v. *Hardy*, 26 Ala. 524; *Ingram* v. *Ingram*, 2 Texas, 590; *Nalle* v. *Fenwicke*, 4 Randolph, 588–9; *Bank of Hartford Co.* v. *Waterman*, 26 Conn. 330.)

The counsel for the State seemed to suppose this provision of our statute was to be considered a Statute of Limitations, and the prerogative of the Government excepted her from its operation.

If this were so, it would not aid the case of the State. The result would only be that the bar would be inapplicable, and the State at liberty to proceed in the Probate Court without regard to the lapse of time. It could not give the District Court, as a Court of Chancery, jurisdiction. The allegation of the bill is, that this very lapse of the year bars the State from proceeding in the Probate Court, and takes away the jurisdiction of that tribunal, and therefore the State resorts to a Court of Equity.

The two propositions destroy each other, and the argument is a perfect "*felo de se.*"

If the Probate Court is bound, so is the District and all other Courts, by the express provisions of the law.

But in truth, this is not a Statute of Limitations at all, but a provision intended to secure absolute verity to a solemn decree of a Court of competent and exclusive jurisdiction, equally conclusive upon all Courts and upon all parties.

The bill further attempts to avoid the statute bar, by allegations of fraud. The sufficiency of these allegations will be considered hereafter.

If they are to be considered sufficient to avoid the bar of the statute in the District Court, they would equally avoid it in the Probate Court itself. This would leave it open to the State upon a proper case to seek relief by a revocation of the decree in that tribunal, and in that only.

The same answer suffices for the suggestion of the counsel for the State, that the decree is opened by the petition of the McDonnell heirs in the Probate Court within the year. If so, the State has no standing upon this record, and had no right or necessity to file this bill. Upon the theory of the counsel, the whole matter is now at large in the Probate Court, and it is perfectly competent for the State to intervene in that tribunal for its interests.

State of California v. McGlynn.

This position is assumed by counsel as an answer to the proposition that the probate decree is final and conclusive in all other tribunals. We content ourselves with showing that if true and sound, the argument does not help the case of the State.

The State brings herself within neither of the exceptions pointed out in the law itself, and is as effectually concluded by the express provision of the statute as any other suitor.

VI.   Independent of all these questions which we have been discussing, and which in our judgment are entirely fatal, this bill, upon its own allegations, makes no case entitling the State to an injunction upon well settled principles of equity practice. Nor is it aided in any degree by the affidavits submitted in its support.

In the language of this Court in the case of *Ely* v. *Frisbie:* " The injunction should have been denied on the uncontradicted allegations of the complaint itself."

The bill shows absolute title in the defense. Until set aside, that title is conclusive. No injunction could, therefore, be properly issued upon the case as made in this record, and we now proceed to state briefly our objections under this head.

1. All the pretended equities of the bill are conclusively answered and denied. (*Gardner* v. *Perkins*, 9 Cal. 553 ; *Burnett* v. *Whitesides*, 13 Id. 156 ; *Ely* v. *Frisbie*, 17 Id. 258–9 ; *Curtis* v. *Sutter*, 15 Id. 263 ; *City of San Francisco* v. *Beideman*, 17 Id. 443 ; *Blatchford* v. *N. H. R. R. Co.*, 5 Abbott, 276.)

2. The District Court cannot issue an injunction restraining the execution of the judgments or orders of another concurrent or coordinate Court. The Court having the control of the judgment or order has the exclusive right to grant the necessary relief. (8 Cal. 27, 35, 71, 271, 521 ; 9 Id. 77, 614.)

*A fortiori*, the judgment of a tribunal having exclusive jurisdiction over the subject matter cannot be thus restrained. (*Gelston* v. *Hoyt*, 3 Wheat. 246.)

3. There is not the slightest necessity for the interference of the Court by injunction in this case. *Lis pendens* filed would answer every purpose, and perfectly protect the rights of the State. The State could in no event suffer loss.

The defense sets up paramount title, and the validity of that title

should be judicially determined before its assertion be enjoined. The State cannot be prejudiced upon her own showing.   Such has been the uniform language of this Court in all previous .cases. (*Curtis* v. *Sutter*, 15 Cal. 263 ; *City of San Francisco* v. *Beideman*, 17 Id. 443 ; *Ely* v. *Frisbie*, 17 Id. 258–9.)

This injunction should, at all events, be modified.   The debts of this estate are heavy, and are carrying heavy interest.   No matter to whom it may finally go, it must go encumbered with these debts. If the State takes it, she must take subject to the debts.   The estate must equally go to administration in the Probate Court, whether owned by the State or by the private citizen.   The claim of the Government is to the surplus, and to that only.   This can be ascertained in the Probate Court, and nowhere else.   (Wood's Stat. 423–4, sec. 1 ; Public Adm'rs, Id. 51 ; Acts of 1861, 631, sec. 52.)

There are no allegations against the validity of any of these debts, nor could there be.   No possible danger to the estate can result from a sale ; the powers of the Probate Court over the whole subject are ample and well guarded.   They are a complete answer to all the charges of the bill with reference to the safety of the property, the fairness of its sale, and its proper administration under the direction of the Probate Court.

That Court has full power to administer every relief which could be desired from a Court of Equity.   (See Probate Act, Wood's Stat., and the Amendments of 1861.)

At all events, then, it is confidently submitted, that this injunction should be so modified as to permit the executors to sell sufficient to pay the debts.   All those interested, in the Probate Court, consented to the order, and are still desirous that it should be carried out for the best interests of all concerned.

4. The allegations of the bill make no case for the interference of a Court of Equity with the decree of the Probate Court, either on the ground of fraud or of newly discovered evidence.

If this were a bill of review, or for a new trial in the same Court, it could not be maintained.

Cumulative or impeaching testimony upon precisely the same points previously tried, presents no ground even for a new trial on

State of California *v.* McGlynn.

motion. (*Brewer* v. *Bowman*, 3 J. J. Marshall, 493 ; 1 Johns. Ch. R. 324 ; *Southard et al.* v. *Russell et al.*, 16 How. [U. S.] 547 ; *Riddle* v. *Baker*, 13 Cal. 295 ; 2 Price Exch'r, 3 ; 9 Id. 34 ; *Jenkins* v. *Eldridge*, 3 Story R. 310–324 ; *Phelps* v. *Peabody*, 7 Cal. 53 ; 4 B. Monroe, 452 ; 11 Id. 219–220 ; 2 Story's Equity, 894–895 ; *Jenkins* v. *Prewitt*, 7 Blackf. 329.)

The slightest diligence would have put the State in possession of this pretended new testimony. The very trial in the Probate Court was sufficient notice.

The whole record shows that as much was known on that trial as at the time the State filed this bill, or could have been easily known by the most ordinary diligence.

Again, this newly discovered testimony would be inadmissible, even if we were now trying the original case. (*Bunyard and Wife* v. *McElroy's Ex'rs*, 21 Ala. 315 ; *Roberts* v. *Tragwick*, 13 Id. 78 ; *Walker* v. *Jones*, 23 Id. 453 ; *Snyder* v. *Ball*, 17 Penn. 58–9 ; *Clark* v. *Morrison*, 25 Id. 455–6 ; *Moore* v. *Allen*, 5 Ind. 521 ; *McDaniel's Will*, 2 J. J. Marshall, 332 ; *Nussear* v. *Arnold*, 13 S. & R. 328–9 ; *Coalter's Ex'rs* v. *Bryan et al.*, 1 Gratt. 86–8, &c.)

The allegations of fraud in obtaining the decree in the Probate Court are equally insufficient, and present no ground of relief. (4 B. Monroe, 452 ; 11 Id. 219 ; *Riddle* v. *Baker*, 13 Cal. 295 ; *Huggins* v. *King*, 3 Barb. 619 ; *Foster* v. *Wood*, 6 John. Ch. 90 ; *Vilas et al.* v. *Jones et al.*, 1 Coms. 281 ; *Livingston* v. *Hubbs et al.*, 3 John. Ch. 124)

This bill makes no case within any of the decisions on questions of this character.

It would be monstrous to overturn the solemn adjudications of Courts at any period of time, however distant, upon such bald and naked pretenses.

VII. The proper parties are not before the Court, and no injunction could be issued in the present stage of the case ; the legatees, and those holding under them by purchase, were necessary parties to this or any other proceeding affecting their interests. (*Patterson* v. *Supervisors of Yuba County*, 12 Cal. 106 ; *Hutchinson* v. *Burr*, Id. 103.)

VIII. · But the counsel for the State presented to the Court a recent Act of the Legislature, passed at its present session, and since this case was pending in this Court on appeal, and announced to the Court that he relied upon its provisions as applicable to the points involved in this case.

We think a very little consideration will dispose of this law.

1. The act, by its own terms, has no application to existing and pending cases.    It has reference to the future, and the future only. " It is well settled, that in the absence of express words to that effect, a law can only operate upon future, and not upon past transactions."

Courts never presume that the Legislature intended retrospective action, unless forced to the conclusion by express language.    This doctrine has been recognized by this Court repeatedly, and needs no citation of authorities to support it.

2. If we are correct in the legal views of the case, this law cannot possibly affect the rights of the appellants.

Long before the passage of the act in question, the whole case had gone into final judgment—had become a thing accomplished and forever closed.    It was beyond the reach of legislative power; as much so as if it had stood upon the record an hundred years. The most latitudinarian devotee of State rights has never contended for such a power.

If we are wrong in our views, then, of course, the respondents do not need the aid of this law.

3. This act is simply an attempt to give the District Court appellate power over the decrees and judgments of the Probate Court, with the right to review and reverse them, under the pretense of the exercise of original chancery jurisdiction.

This cannot be constitutionally done, as this Court has already said in the case of *Deck's Estate* v. *Gerke* (6 Cal. 669).

The doctrine of that case is conclusive of the proposition.

4. The act is unconstitutional and void, for the further reason that it is a legislative attempt to withdraw from the Probate Court a subject matter peculiarly belonging to that tribunal by the Constitution itself, and give it to the District Court; and that, too, after the final action of the Probate Court has been had; nay, even

after the decision has been affirmed on appeal to the Supreme Court.

There is no limitation to the power of the District Court, nor to the time of its exercise. As a Court of original jurisdiction, it is given full power over the decrees and judgments of the Probate Court in all matters involving the validity and the probate of a will. It would directly destroy the distinctions of the Constitution, and break down and subvert the just powers of the Probate Court.

The authorities already cited in this brief, and particularly those from the 2d, 3d and 7th Howard's Mississippi Reports, and the case of *Zander* v. *Coe*, (5 Cal.) lend no countenance to such a doctrine, and in our judgment are conclusive against the constitutional validity of this law.

We have thus noticed the principal points presented upon this record, and we submit that neither upon the law nor upon the facts can the claim of the State be sustained.

If the principles upon which the Government maintains this proceeding are judicially recognized and enforced, the consequences upon the property interests of the country would be most appalling.

It is said that the whole estates of a country must go through the Probate Courts within the limits of an average life.

The laws have provided a tribunal and a system, well conceived and guarded, for the administration of the estates of dead men. They have carefully provided for their final administration and settlement at a short period.

In the ordinary course of an administration, within a year or two at most, the property will have passed into the general circulation by sale and distribution.

Upon the principles contended for by the State, there can be no security to titles. When will the adjudications of our tribunals become final? When will litigation cease, and investigation be foreclosed?

We see no limits to the operation of the principle. If the State may come in after the expiration of one year from the final adjudication of the Probate Court, why not within twenty? At any moment, and at any period of time, this terrible right of the State may be brought into active operation at the mere will of the Attor-

State of California *v.* McGlynn.

ney General.  No title is beyond the reach of its operation.  No judgment, however solemn, can afford protection.

The Legislature have, in their wisdom, undertaken to fix a period of time, beyond which there shall no longer be agitation of a matter so important to the safety and certainty of property interests.  It remains for this Court to say whether this legislative decree is a mere " *brutum fulmen,*" meaningless and forceless.

*J. B. Haggin,* for the Heirs at Law.

I.   On the facts stated in the bill, the State has no title.  In the first place, this is not an information of escheat, or any proceeding in the nature of such information, even if that could make any difference.  It is simply a present claim to the property, and a consequent claim for the protection of it.   But neither title, nor any interest in the property of an estate, nor any control over it, results from the fact of death and the nonexistence of heirs, foreign or resident.

These facts do not give title, any more than the happening of a condition subsequent without entry, or a cause of forfeiture, or prize, without judgment declaring the forfeiture.   The State's title comes from the judgment declaring the escheat, which judgment must be in the regular course of judicial proceedings.   Until such judgment the State has no title, and no right to interfere, any more than a stranger.   (*People* v. *Folsom's Executors,* 5 Cal. 373.)

There is no difference, as held in the case of *Rogers* v. *The State,* (13 Cal. 159) between disturbing the possession of the heir and disturbing that of the administrator or executor, for the right in either case depends on the title of the party seeking to disturb.

If, under any conceivable circumstances, the State could come in *quia timet* to enjoin the proceedings of the Courts and their officers, upon the ground that the State might hereafter get a title to the property, this is not a proper proceeding for that purpose, for there is no information, and this is not a bill auxiliary to that object.   But the full answer to such a proposition is, that the State has no legal or equitable title, upon which to base such a pretension, but at most a bare expectancy, or possibility, which is not sufficient to base an action upon.

17

By the Act of 1856, (concerning escheats) the State has no right, even to an information of escheat, until after the five years allowed by the first section have elapsed.

There is in this act no inhibition against aliens inheriting or taking by inheritance. They inherit as native born citizens, and are allowed five years within which to appear and claim the inheritance, and a further period of five years thereafter to appear and claim the proceeds thereof, should they not have claimed the estate during the first named period.

There is no presumption that a decedent has no heirs capable of inheriting. Perhaps the presumption would be the other way, as the fact of nonexistence of heirs would be very unusual and peculiar.

We have seen that, even in respect to property subject to escheat, the title can only come after inquisition; but here, by the terms of the Act of 1856, no information can be filed until after five years. Even then the information is not for an escheat, but to sell the property, the proceeds still to belong the heirs; and only when the heirs fail to appear and claim the property after the extended period, the "estate or proceeds shall be and become the property of the State."

This section proceeds upon the idea that every estate has heirs, foreign or domestic; for no provision is made for ascertaining whether there be foreign heirs of a decedent, or that the act shall be effectual only upon proof of such foreign heirs. On the contrary, it is scarcely to be presumed that if proof had to be made of the existence of these foreign heirs, that so long a time would be given for them to come forward.

It is obvious, that if this proof be required, in most instances the property would go the State, and be disposed of before the heirs knew anything about the facts. In case no heirs came forward, then, the State does not take the property by escheat. It could not do this without inquisition; but it has said (for that is the effect) that no information of any kind shall be filed by the Attorney General until the lapse of five years without claim. It assumes that every decedent has heirs, and it postpones in favor of such heirs whatever title it might assert to the property until the period of

five years, etc.  It takes no action to escheat the property, or interfere with it, or claim it, until that time, in order to give all foreigners an opportunity to come in and prove their heirship.  Where they do come in, they make proof of their title to inherit, before they can get the property.  This shows that the postponement does not come from any proof of heirship, but is provided by the act itself, in order that the necessary opportunity may be given to test the question and wage their claim.

It is as if the act said : " Whereas, there may be foreign heirs of a decedent leaving property here : now, to enable them to present their claims as such, the State will take no action for a period of five years, and then only on the condition and in the event that the heirs do not come forward," etc.  It is apparent, from the whole act, that this is a correct paraphrase ; for where the Legislature recognizes the right of the foreigner, and provides for a mode of asserting that right, it must be construed to give whatever facilities and means are necessary for its assertion.  But where it is expressly said that the State shall take the property as its own, in the event of the nonappearance of the foreign heir, within a period prescribed, this itself defines the period and mode of acquisition of title by the State, and ignores any other mode or period.

It follows, then, from this view, that the State has no title, and can get none, to interfere, until the expiration of the five years ; and then it could only interfere if no heirs have appeared, and in a prescribed mode, for the protection of the property.

It is no answer to this reasoning, to say that the title would be in abeyance, if there were no heirs, for all this time.  It would, under our statute, be in the hands of the officers of the law, the Public Administrators, if no one else, until the event happens which is to give it to the State.  But the inconvenience, if any, would be of rare occurrence ; and where it did occur, the State would not be much injured by postponing its taking the property for a few years ; while if she asserted title at once, great injury would be done, in many cases, to those beneficially entitled to the estate.  But it is enough to say that the law has made this provision, and it is for the Courts to follow, not to amend it.

If we are mistaken in this view, another ground nearly con-

nected with it would seem conclusive. The statute unquestionably makes the fact that there are foreign heirs, at the very least, a qualification and postponement of the title and interference by the State.

Now; when the State offers to interpose, she must do it in the manner recognized, and in cases provided by law. She cannot claim to do this in the face of a provision of statute denying the right to interfere. If there be even a claimant to the heirship, and he a foreigner, the fact of claim is enough to cause this postponement, that the claimant have an opportunity to present his claim. The right of the State does not attach until the period elapses, and he fails to appear and to prove his claim. When, therefore, the bill shows (as in this case) that there are claimants, it shows that the title is not in the State, and cannot be until the period and event before mentioned. The State does not in such cases take the title, or any right to interfere, until the time elapses and the alleged heir fails to show his right. The State interferes even then in a qualified manner, the ground being that no one else claims, or claiming, has made good the claim.

The claim of a foreign heir is a fact which, being admitted in the bill, is itself a clear and conclusive showing that the State cannot, until after the five years, take any action, or exercise any control over the property.

It would be of no use to give a party five years to establish his title, and then to decide, *in limine*, that he had none, and dispose of the property as if he had none. It is, in other words, the result of the inquiry—on opportunity afforded the foreign claimant—which gives the State its title; the provision being as if the language were : " Whenever an estate is claimed by foreigners, as heirs, then the claimants shall have five years to prove their claim ; if they prove it, they take it as of original right; if they do not prove it in that time, then the State may dispose of it," etc. The State only taking because, and where it is in this manner shown, that there are none others to take it by the rules of descent. These preliminary steps are absolutely essential to taking inquisition or office ; and the State has in such a case neither title nor pretense of title, nor any right to, or any connection with, the property, and has no power to disturb it or interfere with it.

II. Our attention has been called to a recent act, amendatory of the law concerning escheats, passed at the present session of the Legislature.

This Act does not affect the views we have taken of the law of the case ; but if it did, we say that it has no effect, and cannot have any, upon this case. The effect of the law is upon future cases, not those passed on, or pending. "All cases where the Attorney General files (hereafter) an information"—not where he has filed an information, but where he does file an information, etc. The very terms of the law exclude any retrospective effect.

In the case of *Grimes' Estate* v. *Norris*, (6 Cal. 621) this Court says : " It is well settled, that in the absence of express words to that effect, a law can only operate upon future, and not upon past transactions."

To the same point, see the authorities cited by appellants in their brief in that case.

But we go further and say, that if this law be retrospective, and so far as it is restrospective, or intended to give the District Court jurisdiction over causes before trial, or disposed of, in the Probate Court, it is unconstitutional.

A judgment is but a contract, be it upon a will or upon any other fact or state of facts. The judgment in the Probate Court in this case, upon the will, had become final. This law then proposes to infuse into it new elements of dissolution which did not exist at the time of its rendition, or of its becoming final, and to that extent is impairing the obligation of contracts.

By the Acts of 1855, (p. 300) section two hundred and ninety-four of the Act to Regulate the Estates of Deceased Persons was amended, so that " issues of fact joined in the Probate Court shall be certified by the Probate Judge to a District Court of the same county for trial, on the application of any person interested in or to be affected by the decision thereof in the cases following," etc.

Under this law, in the case of *Deck's Estate* v. *Gherke*, (6 Cal. 669) this Court decided that the refusal of the Probate Court to transfer to the District Court for trial certain issues of fact, which had already been tried and decided by the Probate Court, was correct, and say : " So much of the Act of ——— 1855, as provides

for the transfer to the District Court of issues of fact already decided in the Probate Court, is unconstitutional and void.   As the power to try *de novo* issues which have been tried and decided, necessarily includes the power to reverse or modify such decisions, the effect of the Act would be indirectly to confer appellate jurisdiction, which, under our Constitution, the District Courts cannot exercise."

This law seeks to do the same thing that was attempted by the law of 1855 : to try anew a cause before disposed of in the Probate Court—to involve in those cases new elements and questions, not before involved in them—and for the same reason given by the Court in that case, is unconstitutional.

*Gregory Yale,* for Respondent.

The Fourth District Court should have been permitted to send that issue to the country which the Probate declined to do, *devisavit rel non,* forgery or no forgery.

The great effort is now and always has been since the accidental probate of this felonious paper, to take shelter behind a formal decree legalizing the felonious act.

Will or no will when propounded for probate, it is claimed that it became an immaculate testament when solemnized by certain forms.

Broderick may not have made a will, but Butler with his coconspirators has secured the Probate Judge's name, if not D. C. Broderick's, to the paper, and no human power can detach it.   This is the doctrine that this Court is called upon to sanction.

Years and generations hence, the April Term of 1862 is to be signalized, as the forgers and speculators would decree it, as an epoch in the legal history of this great State, when its highest tribunal pronounced in favor of an unmitigated fraud, only because an inferior tribunal had sanctioned it, and because the law afforded no escape from its own machinations.

Such reflections upon the law are unwarrantable, unworthy of any civilized code, and humiliating to listen to, which the law in its mercy only permits to be made in its spirit of self-correction.

First Point—Jurisdiction under the statutes relating to escheats.

I. For the common law doctrine of escheat, see 4 Kent, 479, 9th edition.

1. No inquest of office is necessary in such cases, and an action of ejectment can be maintained at once. Id. 477. The inquest is only necessary in case of alienage. (Id. See case of the Wardens and Commonalty of Saddless, 4 Coke, 434, top page, 58a).

2. And the lands escheat without the incumbrances of the debts of the former owner. (4 Kent, 478.)

3. In New York, and other States, escheated lands are by statute made subject to the debts of the former owner. (*Farmer's Loan and T. Co.* v. *The People,* 1 Sand. Ch. 141; *Morris* v. *White,* 6 John. Ch. 367.) So in England on bill to redeem under third and fourth William. (4 C. 104; *Viscount Downs* v. *Morris,* 3 Hare, 394; 25 Eng. Ch.)

4. Only lands which descend are liable for debts, in the hands of the heirs and distributees. (Act of April 13th, 1850, Belknap, 169, sec. 315.

II. The jurisdiction of the Court is perfect under the statutory provisions relating to escheat. (Act of May 4th, 1852, amended by Act of May 30th, 1855.) Section one declares the escheat; section two, Attorney General files information; section four of the Act of 1855, page two hundred and twenty-two, authorizes the appointment of a receiver.

The clause in the Act of 1852, section two, " and such estate shall not have been sold according to law within two years after the death of the person last seized," is omitted in section two, as amended by the Act of 1855. Jurisdiction has been exercised several times under these acts.

That legal and equitable proceedings may be united under one system. (See *N. Y. Ice Co.* v. *The North Western Ins. Co.,* 12 Abbott's 414.)

If the new Act of 1862 is to control the case on the question of jurisdiction, the numerous authorities cited on that point in the Court below need not be repeated. (See section fourth; *United States* v. *Lamperyac,* Hempstead, 118–19; 7 Pet. 22. See Sedgwick on the rule as to the retroactive effect of a statute, 202.)

III. But it is objected under these acts, that:

1. The state has no remedy in any case of escheat under the Act of 1856, until the expiration of five years from the death of

the party last seized. *The People* v. *Rogers*, (13 Cal.) is relied on for this position.

The only question in that case was upon the constitutionality of the law of 1856, under article one, section seventeen, authorizing *bona fide* aliens to inherit.

That case is not applicable, as the existence of heirs was admitted by the pleadings. Nor is the case law, if applicable, because the Act of 1856 extends the constitutional provision beyond the express limits of its terms. The Legislature could extend the time to fifty or one hundred years, as well as five.

2. It is objected, that it appears from the affidavits in the case that there are heirs in existence, and therefore the State has no interest in the question of will or no will. It is said that we are to prove on this motion two things: 1st, the forgery; 2d, the non-existence of heirs.

We say: first, we are only required to show this in the complaint, (Prac. Act, sec. 111); second, that no issue was made on that question in the Court below; third, that the issue is now pending on the information, the heirs having appeared in that case and issue being taken on their answer; fourth, that that information is the litigation which this bill refers to, and the property involved is the property sought to be protected pending that litigation; fifth, the affidavits used are *ex parte*, not taken in the case, except McDonnell's, and he is incompetent—all received under objection. Nothing further need be said in reply to the brief filed in behalf of the McDonnell heirs, who, according to the facts, seem to have sold their birthright for a mess of pottage to those who are despoiling the estate of their stranger kinsman. The whole argument is based on the Act of 1856, and *The People* v. *Rogers* (13 Cal.) There is in that brief a strange misapplication of the rule stated in *People* v. *Folsom*, (5 Cal.) that an inquest must first be had; of course, this does not apply to escheats in case of defect of heirs, but to alienage.

Second point—Equity jurisdiction.

I. Equity relieves by bill in aid of legal proceedings: 1. An injunction to protect property in litigation. (Prac. Act, secs. 111–12.) "If it should appear by the complaint," etc. (*Hicks* v. *Michael*, 15 Cal. 115.)

2. And entertains jurisdiction in case of an escheated estate. (*Morris* v. *White*, 6 John. Ch. 367 ; *Trezvant, Escheator*, v. *Howard*, 3 Dessau, 875, note.)

3. And to restrain proceedings in other Courts. (3 Dan. Ch. Prac. 1910, including Ecclesiastical Courts ; Id. 1913 ; 1 Eden on Injunctions, 171.)

II. Equity relieves against every species of fraud. (1 Hoveden on Frauds, 9 ; *People* v. *Houghtaling*, 7 Cal. 351 ; *Pierce* v. *Robinson*, 13 Cal. 127.)

1. It relieves against decrees obtained by fraud. (1 Sto. Eq. Jur. sec. 252 ; 2 Id. sec. 1522 ; Adams Equity, 833–4 ; Willard's Eq. Jur. 160–1 ; Story Eq. Plead. sec. 426, 6th ed. ; *Wright* v. *Miller*, 1 Sand. Chan. 120 ; *Russel* v. *Wood*, 1 John. Chan. 405 ; *Carpentier* v. *Hart*, 5 Cal. 466–7 ; *Arrington* v. *Sperry*, 5 Id. 514 ; *Robb* v. *Robb*, 6 Id. 22 ; *Heyneman* v. *Dannenburg*, Id. 380 ; *Uhlfelder* v. *Levy*, 9 Id. 614–15 ; *Chester* v. *Miller*, 13 Id. 560 ; *City of Oakland* v. *Carpentier*, Id. 551–2 ; *Belloc* v. *Rogers*, 9 Id. 129 ; and *Deck* v. *Gerke*, 12 Id. 433.)

In *Clark* v. *Perry* (5 Cal. 58–9–60) the bill alleged a fraudulent settlement of administrator's accounts, and the decree was pleaded as conclusive, under section two hundred and thirty-seven of the Act relating to the Settlement of the Estates of Deceased Persons. (Belknap, 92, 1st edition.) See section thirty-six as to conclusiveness of decrees in probate of wills. What is the difference when the decree is obtained by fraud ?

*Sandford* v. *Head & Merritt* (5 Cal. 297–8). Fraudulent decree of Probate Court in ordering plaintiffs to pay over to the administrator a sum of money, charging collusion between the Probate Judge and the administrator, set aside by the exercise of chancery power.

Full and complete jurisdiction over probate matters by chancery declared ; and against the constitutionality of the law making the jurisdiction exclusive in Probate Courts. (*Wilson* v. *Roach*, 4 Cal. 366.)

Probate proceedings not to be attacked collaterally. (*Castro* v. *Richardson*, 18 Cal. 480. See to same point *Irwin* v. *Scriber*, Id. 503.)

2. Chancery in other States, and in England, has set aside probate decrees in settling accounts on a charge of fraud. (*Pratt* v. *Northam*, 5 Mason, 103.)

Under the statute of Vermont, declaring that such settlements " shall not be the subject of reëxamination in any way or manner whatsoever," the statute gives no stronger efficiency to a probate decree than a judgment possesses at common law. (*Gould* v. *Gould*, 3 Story, 519, 533, 536–37.)

The general doctrine of *Pratt* v. *Northam* reiterated. (*Atkins* v. *Kurmian*, 20 Wend. 246.)

Probate decrees not to be impeached for fraud collaterally. Another case of jurisdiction. (*Harvey* v. *Richards*, 2 Gallison, 231.)

3. The jurisdiction extended to setting aside the probate of wills, and declaring the person obtaining it a trustee to the injured parties. The distinction is taken in the case of a forged will, as to equity jurisdiction in refusing to set aside a will obtained by fraud, because in that case the fraud is upon the testator, and in the other upon the parties entitled to the estate. (*Barnsley* v. *Powell*, 1 Ves. Sen. 120, 285–8, 290.)

This case is referred to as authority for granting relief against judgment and decrees obtained by fraud, in *Russell* v. *Wood*, (1 John. Chan. 406) and in *Wright* v. *Miller*, (1 Sand. Chan. 401) and both of these cases are cited as authority for setting aside a decree in *Sandford* v. *Head*, (5 Cal. 298) also in Willard's Eq. 160.

In such case, where the probate of a will is obtained by fraud, the party so obtaining it will be decreed to stand as a trustee for the parties interested. (1 Spence's Eq. 625. And see note 1 to sec. 184, 1 Story's Eq. 183, where the case is cited as authority for the distinction ; and the case in Ambler, 762, cited also.)

*Bailey* v. *Styles*, (1 Green Chan. 229). Equity jurisdiction in case of the spoliation of a will. *Middleton* v. *Sherbourne*, (4 Young & Collier, 358. Wills set aside by bill, when obtained by fraud. See case in 2 Com. 498, on this point, further on as to the New York rule. (*Clark* v. *Sawyer*.)

Precedents—(Equity Draftsman, 70 ; 2 Van Santvoord's Pleading, 151 : *Clark* v. *Gaines*, 13 La. Annual, 138.)

III. But it is objected that equity will not entertain a bill to set

aside a will obtained by fraud. This is not the case here. The rule of law already discussed answers this objection. There is no will before the Court. The object is to set aside a decree obtained by fraud upon the distinction taken in *Barnsley* v. *Powell*, 1 Ves.

And in no event will the Court refuse to interfere, where there are other heads of equity jurisdiction involved in the same bill, even incidentally, as in *Middleton* v. *Sherbourne*, (4 Young & Collier) where the jurisdiction was sustained to set aside a will obtained by fraud, because the bill sought to set aside some outstanding terms fraudulently obtained. In this case there are several other heads of equity jurisdiction. See the rule as applied in New York. (*Clark* v. *Sawyer*, 1 Paige, 172; same case, 2 Barb. Chan. R. 412; 2 Coms. 498.).

Third point—The jurisdiction of the Probate Court is inadequate.

I. Special and limited jurisdiction of Probate Courts. (*Grimes' Estate* v. *Norris*, 6 Cal. 625; *Smith* v. *Andrews*, Id. 654; *Haynes* v. *Meeks*, 10 Id. 116; Belknap, 24, and note *a; Townsend* v. *Gordon*, 19 Cal. 188.)

It has no jurisdiction over escheated estates. See statute conferring jurisdiction upon District Courts. (*O'Harlin* v. *Den*, 1 Spence, 40–1; 1 Zabriskie, 391, affirmed in Court of errors, and *Colgon* v. *McKean*, 4 Zabriskie, 566; Trezvant, Escheator, 3 Dessan, 877–8 and note.)

II. But it is objected that the decree of Probate set up by the executor in his answer is conclusive. This means only as to collateral proceedings.

1. Under section thirty-six, making the probate conclusive, if not contested within one year, the rule does not operate in this case, because the probate was contested by McDonnell within that time. See his petition and citation, returnable in February, 1862.

2. It is no more conclusive than the settlement of an executor's accounts, under section two hundred and thirty-seven, (Belknap, 137) which may be set aside on the ground of fraud by a party who was not actually before the Court. (*Clark* v. *Perry*, 5 Cal. 58; *Williams* v. *Price*, 11 Cal. 213; *Pratt* v. *Northam*, 5 Mason, 103; *Oakland* v. *Carpentier*, 13 Cal. 152–3.)

3. The State is not bound by the general language of the act,

not being named. (Ang. on Limitations, sec. 37 ; Sedg. 105 ; *U. S.* v. *Hoar*, 2 Mason, 312, expressly in point.)

4. The probate of the will is only conclusive, if at all, as to the personal, but not as to the real estate :

First. The County Judge has the powers of a " Surrogate" or "Probate Judge," by section eight, article six of the Constitution. Taken from the New York Constitution literally, except the addition of the words " Probate Judge." (Art. VI, sec. 14 ; Dayton Surrogate, 8.)

Power of our Courts (Probate) to open and receive proof of last wills and testaments. (Belknap, sec. 62, 22.)

This section does not name " real estate," or " exclusive jurisdiction." In New York, he takes the proof of real and personal estate. (Dayton, 19.)

In *Lansing* v. *Adams*, (17 Cal. 641) the testamentary paper was admitted, though not proved.

In *Castro* v. *Richardson*, the question was not raised, and no brief filed for respondent.

In *Wilson* v. *Roach*, the Court say that the Legislature cannot infringe upon the constitutional powers of the District Court, as a Court of law and equity, under the Constitution, by granting exclusive jurisdiction to Probate Courts. (4 Cal. 366.)

And under the organization of a Court of Equity, an issue, without consent, could be directed to try the validity of a will. So proof could be made in a common law Court of the execution of a will.

There is nothing in the Constitution relating to Probate Courts which takes this original jurisdiction away, or would justify, if it had been done, an " exclusive jurisdiction" over the probate of wills in any other Court.

III. But it is objected, that the parties to the fraud are not before the Court—they have sold out to innocent persons. These purchasers have not paid the purchase money, and had notice of the fraud.

Notice before payment of the purchase money is sufficient, though a contract exists. On this question, see *Thornburg* v. *Bevil*, 1 Young and Col. 563, and note 1 ; *Potter* v. *Saunders*, Hare, 1 ; *Powell* v. *Den*, 1 Young and Col. 356 ; *Palmer* v. *Scott*, 1 Russ. & Mylne, 399, and note 1.

State of California *v.* McGlynn.

Fourth point.

The seventh point made in appellant's brief is an objection to the bill, for the want of necessary parties. It is said that the legatees, and those holding under them, were necessary parties to this, or any other proceeding affecting their interests. *Patterson* v. *Supervisors Yuba Co.*, 12 Cal. 106, and *Hutchinson* v. *Burr*, Id. 103 are cited to support this point.

In answer to this objection, it may be insisted—

1st. That no objection was taken by the executor, McGlynn, in the Court below, by answer or demurrer, to the want of these parties, and that such objection was therefore waived. (Practice Acts, sec. 45.)

No such point was presented or argued in the Court below, but is now made for the first time, in this Court, on appeal, without an opportunity of allowing the plaintiff below to have brought them in by amendment.

And, 2d. A conclusive answer to this objection will be found in the nature of the proceeding by information. Only such parties as are in possession need be made defendants. A publication is made, calling on all parties interested, to appear in the case at the expiration of thirty days. The assignees of the legatees made their appearance by answer, setting up their title by purchase. That case is still pending in the Court below, awaiting the trial on information. That is the case the State desires to try, and is the case in which the title of the parties must finally be determined, as well as that of the heirs. The bill in Chancery is only auxiliary to the information, in order to procure the aid of a Court of Equity, whose powers in the proceeding by information were considered of doubtful application. They have not, therefore, anything of which to complain, in any proper sense, more than any other defeated litigants, contending with an adverse decree justly rendered.

The rule under section forty-five of the Practice Act, and the Chancery rule on the same subject, as to the proper mode and time of making objections to the want of parties, are too well settled to need authorities. The objection may be made in equity by demurrer, plea or answer; and the most that a Court would do where the object of parties was apparent, would be to let the

cause stand over in order to make the parties; or if the bill be dismissed under such circumstances, it should be without prejudice. (Story's Eq. Plead., sec. 236, and note 4.) But this is where the objection is properly taken.

NORTON, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

The complaint in this action sets forth that the Attorney General, in behalf of the People, has filed an information in the same Court, asking for a decree, that the estate of the late David C. Broderick has escheated to the People of the State; that the Attorney General files this bill in equity, and seeks the aid of the equity powers of the Court in furtherance of the objects and purposes of said information; that said Broderick died on the sixteenth day of September, 1859, intestate, leaving no heirs, representatives, or devisees, capable of inheriting any of his real or personal estate; that said Broderick left certain real and personal estate in the city and county of San Francisco, which has escheated to the State; that on the twentieth of February, 1860, the defendants presented a paper writing, purporting to be the last will and testament of said Broderick, to the Probate Court of the county of San Francisco for probate; that on the eighth day of October, 1860, a judgment or decree was entered by said Probate Court admitting such paper writing to probate as the last will and testament of said Broderick, and granting letters of administration with the will annexed to the defendants; that said paper writing, purporting to be the last will and testament of said Broderick, was a false and forged paper, and was fabricated, after the death of said Broderick, by certain persons with George Wilkes, whose name appears as the universal devisee; that the defendant Butler caused false testimony to be used in procuring said decree of probate; that the defendants, as executors, have allowed certain debts against said estate, and have applied to the Probate Judge for leave to sell the real estate to pay said debts, and a legacy to McGlynn, and that an order allowing such sale has been made, and the property advertised for sale, and that if such sale takes place to innocent purchasers, it will work irreparable injury to the plaintiffs, by causing a great number of

parties to become interested, and by casting a cloud upon the plaintiffs' title ; that the defendants are in the actual possession of said real estate ; that the knowledge of said fraud and forgery came to the Attorney General in shape to warrant legal proceedings in behalf of the State only after the eighth day of October, 1861, when it was too late to apply to the Probate Court to revoke the probate of said paper writing. After setting forth certain other matters, not material to specify here, the complaint prays, among other things, that the decree admitting the said forged will to probate, and the order allowing the sale of said real estate, be set aside, and annulled, and declared of no effect ; that the sale of the real estate be enjoined, and the defendants be restrained from further intermeddling with the estate ; that this case be retained until said information be determined ; that said will be declared a forgery, and of no effect ; and that said real estate be declared to have escheated to the people of the State, without incumbrance or liabilities.

The answer of McGlynn, among other things, on information and belief, denies that said Broderick died intestate, and avers that said paper writing was the genuine last will and testament of said Broderick, and that the devisee, George Wilkes, therein mentioned, is and was at the death of said Broderick a citizen of the United States, resident of the State of New York, and in every way capable of inheriting and receiving as such devisee any of the real and personal property of the said estate, and denies that the said Butler, or any other person, caused any false testimony to be used in procuring said decree of probate.

It is not necessary to consider what is the proper effect, on an application for an injunction, of a complaint filed on behalf of the People without verification, or the effect of an answer in such a case denying the material averments on information and belief, because the facts on which our decision depends are not disputed, but are averred in the complaint, and are admitted and insisted upon in the answer. It is not claimed in the complaint but that the devisee named in the will is capable of taking and holding the estate, if the will is valid.

The purpose of this action is to aid the proceeding by informa-

tion instituted to determine the escheat of the estate of David C. Broderick.   The aid sought is a judgment, which will have the effect to set aside and vacate the probate of what is claimed to be a forged will, by which Broderick devised and bequeathed his estate, real and personal, principally to George Wilkes, who is a devisee capable of taking and holding, and to set aside the will. To displace this probate and set aside the will is necessary to the success of the proceeding by information, since the existence of such a devisee prevents the estate from escheating.   An escheat occurs only when a person shall die seized of any real or personal estate, and leaving no heirs, representatives or devisees capable of inheriting or holding the same.

The fact that a will purporting to be the genuine will of Broderick, devising his estate to a devisee capable of inheriting and holding it, has been admitted to probate and established as a genuine will by the decree of a Probate Court having jurisdiction of the case, renders it necessary to decide whether that decree, and the will established by it, or either of them, can be set aside and vacated by the judgment of any other Court.   If it shall be found that the decree of the Probate Court, not reversed by the appellate Court, is final and conclusive, and not liable to be vacated or questioned by any other Court, either incidentally or by any direct proceeding, for the purpose of impeaching it, and that so long as the probate stands the will must be recognized and admitted in all Courts to be valid, then it will be immaterial and useless to inquire whether the will in question was in fact genuine or forged.

The magnitude of the estate in litigation naturally awakens unusual attention, and prompts the inquiry whether so serious a question as the truth or falsity of this will can be forever settled by the simple decision of one Court, and that a Court which, for most purposes, is not of the highest jurisdiction; and whether, if such be the case, it is owing to any defect in judicial proceedings peculiar to this State or to this country.   In view of the interest in this question excited by this case, it is not inappropriate to say that the laws of this State upon this subject are in no respect peculiar or singular; and the decision of this question by this Court must be in conformity with, and controlled by, the uniform decisions of the

State of California *v.* McGlynn.

same question which have been made by the Courts of the other States and of England.

In England, the probate of wills of personal estate belongs to the Ecclesiastical Courts. No probate of a will relating to real estate is there necessary. The real estate, upon the death of the party seized, passes immediately to the devisee under the will, if there be one ; or if there be no will, to the heir at law. The person who thus becomes entitled takes possession. If one person claims to be the owner under a will, and another denies the validity of the will . and claims to be the owner as heir at law, an action of ejectment is brought against the party who may be in possession by the adverse claimant ; and on the trial of such an action, the validity of the will is contested, and evidence may be given by the respective parties as to the capacity of the testator to make a will, or as to any fraud practiced upon him, or as to the actual execution of it, or as to any other circumstance affecting its character as a valid devise of the real estate in dispute. The decision upon the validity of the will in such action becomes *res judicata*, and is binding and conclusive upon the parties to that action and upon any person who may subsequently acquire the title from either of those parties ; but the decision has no effect upon other parties, and does not settle what may be called the *status* or character of the will, leaving it subject to be enforced as a valid will, or defeated as invalid, whenever other parties may have a contest depending upon it. A probate of a will of personal property, on the contrary, is a judicial determination of the character of the will itself. It does not necessarily or ordinarily arise from any controversy between adverse claimants, but is necessary in order to authorize a disposition of the personal estate in pursuance of its provisions. In case of any controversy between adverse claimants of the personal estate, the probate is given in evidence and is binding upon the parties, who are not at liberty to introduce any other evidence as to the validity of the will.

In this condition of the law as to the mode of proving wills in England, a vast number of cases have arisen, in which applications have been made to the Court of Chancery to set aside wills upon the ground that they were obtained by fraud. These applications have been made upon the maxim that fraud is a peculiar object

18

of chancery jurisdiction, and the detection and defeating of it one of the special objects for which Courts of Chancery were established.  But in these cases the relief sought has been uniformly denied, for the reason that the Court of Chancery has no power to determine the validity of a will.  However comprehensive the jurisdiction may be to set aside other fraudulent instruments, all control over wills has been disavowed by the Court of Chancery. The reason assigned as respects wills of personal property is, that the subject belongs exclusively to the Ecclesiastical Courts, which Courts are alone competent to decide upon their validity, as well where that depends upon a question of fraud as upon any other ground.  (*Archer* v. *Masse*, 2 Vernon, 8; *Allen* v. *Dundas*, 3 D. & East. 131; *Gingell* v. *Home*, 9 Simon, 539.)  As respects wills of real estate, the reason assigned in some cases is that there is a remedy at law; in others it is said, generally, that the Court of Chancery has no jurisdiction to determine the validity of a will. (*Kerrick* v. *Bransby*, 7 Brown's Cas. in Pat. 437; *Jones* v. *Jones*, 7 Price Ex. R. 663; *Jones* v. *Frost*, Jacobs, 466; *Pemberton* v. *Pemberton*, 13 Ves. 290.)  As the reason that the Ecclesiastical Courts have exclusive jurisdiction does not apply to wills of real estate, and as the reason that there is a remedy at law applies equally to other instruments over which Courts of Chancery exercise jurisdiction to set them aside for fraud, it has been said that the reasons assigned by Courts of Chancery for declining to take jurisdiction in cases of wills of real estate alleged to be obtained by fraud are not satisfactory.  But notwithstanding this objection to the sufficiency of the reasons assigned, the fact that the jurisdiction does not exist has been constantly asserted through a long line of decisions, and is as firmly established as any other principle in regard to chancery jurisdiction.   (See cases above cited.)

Courts of Chancery, in their efforts to defeat fraudulent practices, have in some cases deprived parties of the benefit of the fraudulent will by decreeing that such parties shall hold the property under the will in trust for the parties who would have been entitled to it if such will had not been probated.  In such cases, however, they have disclaimed any power to set aside the will or the probate, and the resort to this circuitous mode of defeating a fraud but the more

clearly evinces how firmly the principle is fixed, that they have no power to act directly upon the subject. In one case, (*Barnesly* v. *Powell*, 1 Ves. Sen. 284) the Court decreed the party claiming under a probated will to go into the Probate Court and consent to the probate being set aside. It claimed to do this upon the ground that the probate was obtained by virtue of a deed of proxy fraudulently procured; and as the Court of Chancery had the power to set that deed aside, it would leave the probate without any foundation. At the same time that this novel proceeding was adopted, the Court say it will be done "without interfering with any jurisdiction." This is the only case, so far as we are aware, since the decision in the case of *Kerrick* v. *Bransby*, in the year 1727, in which a probate has been avoided even indirectly by the aid of a Court of Chancery; and this was effected, not by the decree or order of the Court of Chancery operating upon the decree of probate, but coercing the party to consent that the Probate Court should set aside its own decree. In the case of *Gingell* v. *Horne*, (9 Simon, 539) the Vice Chancellor says : " The impression which has been fixed in my mind for several years is, that it is settled law that there is no method of escaping from the effect of probate when granted, unless in a case like that of *Barnesly* v. *Powell*, in which Lord Hardwick set aside the ground on which the probate was obtained." It is said in some cases that a Court of Chancery in cases of wills of real estate can send out an issue to a Court of Law, and have the question of the validity of the will tried by a jury. But that occurs only in cases where no objection is taken to the jurisdiction, and does not mean that an action can of right be instituted in a Court of Chancery for the purpose of having the validity of a will determined by an issue to be sent out of that Court. In the case of *Jones* v. *Jones* (3 Merivale, 171) the Master of the Rolls says : " It is impossible that at this time of day it can be made a serious question whether it be in this Court (of Chancery) that the validity of a will, either of real or personal estate, is to be determined. * * Now, although there may have been instances of issues directed on the bill of an heir at law, where no opposition has been made to that mode of proceeding, yet I apprehend that he cannot insist on any such direction. He may bring his eject-

ment, and if there be any impediments to the proper trial of the merits, he may come here to have them removed; but he has no right to have an issue substituted in the place of an ejectment."

In the United States, the probating of wills is regulated in most States, and probably in all, by statutes in which the power to probate wills is conferred upon a special Court, a Probate or Surrogate Court, corresponding in this respect to the Ecclesiastical Courts of England. In some of the States, following the English system, the power to probate is only given in cases of wills of personal estate, leaving wills of real estate to be proved on the trial of any particular action depending upon it. In others, the power to probate is extended to both kinds of wills, but making it conclusive only in cases of wills of personal property, and only *prima facie* evidence, and liable to be disproved on trials of cases depending upon wills of real estate. In others, the power to probate applies to wills of both kinds, and the same conclusive effect is given to the probate in both cases.

Upon examining the decisions of the Supreme Court of the United States, and of the Courts of the several States, it will be found that they have uniformly held that the principles established in England apply and govern the cases arising under the probate laws of this country; and that in the United States, wherever the power to probate a will is given to a Probate or Surrogate's Court, the decree of such Court is final and conclusive, and not subject, except on an appeal to a higher Court, to be questioned in any other Court, or be set aside or vacated by the Court of Chancery on any ground.

In the case of *Gaines* v. *Chew*, (2 How. U. S. Rep. 645) the Court say: "In cases of fraud, equity has a concurrent jurisdiction with a Court of Law, but in regard to a will charged to have been obtained through fraud, this rule does not hold. It may be difficult to assign any satisfactory reason for this exception. That exclusive jurisdiction over the probate of wills is vested in another tribunal, is the only one that can be given." In the case of *Thompkins* v. *Thompkins*, (1 Story's Rep. 547) Judge Story, in speaking of the law of England, says: "The validity of wills of real estate is solely cognizable by Courts of Common Law in the ordinary forms of

State of California *v.* McGlynn.

suits; and the verdict of the jury in such suits, and the judgment thereon, are, by the very theory of the law, conclusive only as between the parties to the suit and their privies. But it is far otherwise in cases of personal estate. The sentence and decree of the proper Ecclesiastical Court, as to the personal estate, is not only evidence, but is conclusive as to the validity or invalidity of the will; so that the same question cannot be reëxamined or litigated in any other tribunal. The reason is, that, it being the sentence or decree of a Court of competent jurisdiction directly upon the very subject matter in controversy, to which all persons who have any interest are or may make themselves parties, for the purpose of contesting the validity of the will, it necessarily follows that it is conclusive between those parties. For otherwise, there might be conflicting sentences or adjudications upon the same subject matter between the same parties; and thus the subject matter be delivered over to interminable doubts, and the general rules of law as to the effect of *res judicata* be completely overthrown. In short, such sentences are treated as of the like nature as sentences or proceedings *in rem*, necessarily conclusive upon the matter in controversy for the common safety and repose of mankind." Then, after stating that by the laws of Rhode Island the Probate Courts have complete jurisdiction as to the probate of wills, whether the wills respect real estate or personal estate, or both, and making some remarks upon the effect of these local laws, he says: " In short, there can be no difference in point of principle, where the Court of Probate has an absolute and positive jurisdiction, whether the will respects real estate or personal estate. In such case, the will must be equally open to controversy in all other Courts and suits, or it is closed in all. Yet no one pretends that the probate is not conclusive as to the personal estate of the testator, and the title of the executor thereto. * * * Upon the whole, in the absence of all controlling authorities under the local law, looking at the matter upon principle, I am of opinion that the probate of the present will ·by the Supreme Court of the State, being a Court of competent jurisdiction, is final and conclusive upon the question of the validity of the will to pass the real estate in controversy."

In the case of *Adams* v. *De Cook*, (1 McAllister, 253) the Court

say: "In this State, (California) where the general power of proving all wills is vested in a special jurisdiction known as the Probate Court, the jurisdiction of the tribunal is as conclusive in regard to the probate of wills of real and personal estate, as is that of the Ecclesiastical Courts in England in relation to wills of personalty. If, therefore, there had been a probate of this document as a will by the appropriate tribunal in this State, such action, if final, would have been conclusive." In the case of *Derland and James* v. *Harrington's Heirs*, (29 Ala. 95) the Court say: "The probate of a will, under any circumstances, is a proceeding *in rem*. It operates upon *the thing* itself. It defines, and in a great degree, creates its status. The *status* thus defined adheres to it as a fixture; and the judgment or decree in the premises, unless avoided in some mode prescribed by law, binds and concludes the whole world." In the case of *Bogardus* v. *Clark*, (4 Paige, 625) the Court say: "It [a probate of a will of personalty] is in the nature of a proceeding *in rem*, to which any person having an interest may make himself a party, by applying to the proper tribunal before which such proceeding is had, and who will therefore be bound by the sentence or decree of such tribunal, although he is not in fact a party." In *Woodruff* v. *Taylor*, (20 Vermont, 65) the Court say: "The probate of a will I conceive to be a familiar instance of a proceeding *in rem* in this State. The proceeding is in form and substance upon the will itself. No process is issued against *any one*, but all persons interested in determining the state or condition of the instrument are constructively notified by a newspaper publication to appear and contest the probate; and the judgment is, not that this or that person shall pay a sum of money or do any particlar act, but that the instrument is or is not the will of the testator. It determines the *status* of the subject matter of the proceeding. The judgment is upon the thing itself; and when the proper steps required by law are taken, the judgment is conclusive, and makes the instrument, as to all the world (at least so far as the property of the testator within this State is concerned) just what the judgment declares it to be." In the case of *Ballou* v. *Hudson*, (13 Grattan, 682) the Court say: "Considerations of public policy require that all questions of succession to property

should be authoritatively settled.  Courts of probate are therefore organized to pass on such questions, when arising under wills ; and a judgment by such Court is conclusive whilst it remains in force, and the succession is governed accordingly.  A judgment of this nature is classed amongst those which in legal nomenclature are called judgments *in rem.*  Until reversed, it binds not only the immediate parties to the proceeding in which it is had, but all other persons and all Courts."

The cases above cited have been selected from a great body of cases of like import, because, while showing the conformity of our laws with those of England, as to the conclusiveness of probate decrees, they also show the reason why they are conclusive, not only upon the parties who may be before the Court, but upon all other persons and upon all Courts; and that is, that it is not a proceeding to decide a contest between parties, but a proceeding *in rem*, to determine the character and validity of an instrument affecting the title to property, and which it is necessary for the repose of society should be definitely settled by one judgment, and not left to be buffeted about by different, and possibly conflicting, judgments of various Courts.

In the State of California, the jurisdiction of the Probate Court is the same in regard to wills of real estate as to wills of personal estate.

The argument is strongly urged, that it will give great encouragement to fraudulent practices, and in many cases lead to the despoiling of rightful heirs of their inheritance, if the decision of the Probate Court is not subject to be set aside by the Court of Chancery, on allegations of fraud.  This consideration has not escaped the attention of the Legislature of this and other States, and laws have been passed to obviate this danger, so far as seemed practicable, without on the other hand exposing persons innocently dealing with estates of deceased persons to be harassed by subsequently discovered frauds.  Hence, a period is provided in some States, and probably in all, in which, after judgment is pronounced, parties interested may have the decree opened, and the question of the validity of the will reëxamined.  This time varies in different States.  We learn from some of the cases cited, that in Virginia it

is seven years, in Alabama it is five years. In New York, as to personal property—as to which only the decree is conclusive—the time is one year. In this State, where there is no distinction between wills of real and personal estate, the time is but one year. In the Act to regulate the Settlement of the Estates of Deceased Persons, it is provided by section thirty as follows: "When a will has been admitted to probate, any person interested may, at any time within one year after such probate, contest the same, or the validity of the will. For that purpose, he shall file in the Court before which the will was proved a petition, in writing, containing his allegations against the validity of the will, or against the sufficiency of the proof, and praying that the probate may be revoked." By section thirty-six, as follows: "If no person shall, within one year after the probate, contest the same, or the validity of the will, the probate of the will shall be conclusive; saving to infants, married women and persons of unsound mind, a like period of one year after their respective disabilities are removed." These provisions of our statute are but the embodiment of the principles of law which have been settled by the decisions of the Courts in England and the United States as being the most expedient and just, having regard to the rights of persons claiming the estate of a deceased owner, and the requirements of society that the title of property should, as soon as practicable, be made certain and withdrawn from the arena of litigation. A special tribunal is therefore established to decide upon the validity of wills, and the decision of that tribunal is made final and conclusive; giving, however, a right of review by the Supreme Court, and a further right of a new action or proceeding in the same tribunal within one year after the decision of the first proceeding, and securing the rights of persons under disabilities. The limitation of one year within which the new trial must be demanded is shorter than in some States, where the decree is made conclusive upon real as well as personal estate, but it is the same as that allowed in New York in cases of personal estate, and in providing which, direct reference was had to the conclusiveness of the decree. The Revisers, as a reason for allowing a rehearing within one year, say: "The notice previous to proving a will is necessarily short, and must often be inadequate

State of California *v.* McGlynn.

to apprise all the parties interested; and yet it would seem that when once admitted to proof, the probate is perfectly conclusive." Although one year as a bar to further litigation as to real estate held under a will is shorter than in other States, it is not disproportioned to our limitation of real actions as compared with other States. Twenty years is the usual time limited for bringing real actions in other States, while in ours it is only five. Nevertheless, the time as affecting real estate, is too short, in consideration of the policy which has been applied to the subject in other States; but whether this has arisen from an ill-judged policy of our Legislature, in seeking to quiet titles by too summary a process, or by inadvertence in not distinguishing between real and personal property, the remedy is not within the power of Courts.

This review of the cases decided in England and in the United States, establishes that it is a perfectly settled doctrine that the decision of the Court to which the proof of wills is confided, whether of real or personal estate, is conclusive upon the question of the validity or invalidity of the will; that this decision cannot be questioned collaterally in any other Court; and that it cannot be reviewed or set aside by the Court of Chancery on an allegation of fraud, or on any other ground.

The only decision in our own State directly upon the subject is in consonance with those of other States. In the case of *Castro* v. *Richardson*, (18 Cal. 478) the Court say: "The Court of Probate have exclusive jurisdiction of matters relating to the proof of wills; and before a will can be read in evidence in support of a title under it, the party seeking to introduce it must show that it has been regularly admitted to probate. It was intended that the mode of proof pointed out by the statute should be uniformly pursued, and to give effect to that intention, it is necessary to maintain the exclusive authority of the Probate Courts. Ample provision is made for determining controversies arising in the course of their proceedings; and in rejecting a will or admitting it to probate they act judicially, and their acts possess conclusive force."

Although the prayer of the complaint in this action asks a decree that the will in question be declared a forgery and of no effect, yet a distinction is claimed to exist as to the power of a Court of

State of California *v.* McGlynn.

Chancery to set aside a decree of a Probate Court, if it must be conceded that the power does not exist to decide upon the validity of a will; but no cases are referred to in which such a distinction is taken.    The only case referred to as countenancing such a view is that of *Barnesly* v. *Powell;* but in which, as we have seen, the Court disclaim the power to set aside the decree, and only exercised the power to set aside a deed of consent on which the decree rested; and by reason of having jurisdiction of the party for that purpose, decreed him to consent to the vacating the probate decree. Indeed, we are unable to see how the line is to be drawn, at least in this case, between the power to set aside the decree of probate and that to declare the will a forgery; because the only fraud charged to have been practiced in procuring the probate is the false testimony of witnesses as to the validity of the will.    No fraud was practiced upon the heirs to procure a consent to the probate, as in the case of *Barnesly* v. *Powell*, nor any device to prevent a full investigation before the Probate Court.    The Court of Chancery has no capacity, as the authorities have settled, to judge or decide whether a will is, or is not, a forgery; and hence, there would be an incongruity in its assuming to set aside a probate decree establishing a will, on the ground that the decree was procured by fraud, when it can only arrive at the fact of such fraud by first deciding that the will was a forgery.    There seems, therefore, to be a substantial reason, so long as a Court of Chancery is not allowed to judge of the validity of a will, except as shown by the probate, for the exception of probate decrees from the jurisdiction which Courts of Chancery exercise in setting aside other judgments obtained by fraud.    But whether the exception be founded in good reason or otherwise, it has become too firmly established to be disregarded.    At the present day, it would not be a greater assumption to deny the general rule that Courts of Chancery may set aside judgments procured by fraud, than to deny the exception to that rule in the case of probate decrees. We must acquiesce in the principle established by the authorities, if we are unable to approve of the reason.    Judge Story was a staunch advocate for the most enlarged jurisdiction of Courts of Chancery, and was reluctant to allow the exception in cases of

wills, but was compelled to yield to the weight of authority. He says: "No other excepted case is known to exist; and it is not easy to discover the grounds upon which this exception stands in point of reason or principle, although it is clearly settled by author-ity." (1 Story's Eq. Juris. sec. 440.)

It is said that the period of one year fixed for persons interested to have the probate of a will opened and reconsidered, is a limita-tion which does not run against the State. It is not important to decide this; because, if it could be considered in that light, the only effect would be to authorize the State to institute such proceedings in the Probate Court, not to confer jurisdiction upon the District Court, and no wish or purpose to institute such a proceeding is suggested in this case.

This case comes before us on an appeal from an order allowing an injunction. The Court below, after considering to some extent, but without deciding, whether a District Court has jurisdiction to set aside the probate of a will, or to declare a will void, states that it has power to protect property by injunction pending another liti-gation; and the injunction in this case appears to have been granted solely on this ground of jurisdiction, in order to prevent a dissipa-tion of the property pending the litigation on the information for an escheat. But it is always an absolute objection to the allowance of an injunction, for the purpose of protecting property during a litigation, that the complaint shows that the party seeking the in-junction has no title to or interest in the property, and no claim to the ultimate relief sought by the litigation; in other words, that the complaint shows no equity. This complaint shows affirmatively and distinctly that a will has been in due form admitted to probate, by which the property in question is devised to a person whom it is not denied is capable of taking and holding it. If, as we have con-cluded, the District Court has no power to set aside that probate and will, or to disregard the probate and investigate the validity of the will on the trial of the information, then the existence of that probate, and the will established by it, is a bar to the ultimate re-lief sought in this action, and by the information to which this action is auxiliary, and as a consequence, precludes all reason or object for an injunction, and with it the right to one.

A law was enacted on the third of March, 1862, relating to this subject; but it is not necessary to consider what may be its effect in other cases, because, although it was brought to our notice, it was not urged by counsel that it could affect our decision, since it was not in force at the time this case was decided by the Court below, nor until after the case was pending before us on appeal. We must decide whether the order made by the Court below was correct or erroneous at the time it was pronounced.

The order appealed from must, therefore, be reversed, and the injunction dissolved.

On petition for a rehearing, NORTON, J. delivered the following opinion—FIELD, C. J. and COPE, J. concurring.

A petition for rehearing has been presented in this case, principally for the purpose of obtaining a decision upon the point whether the State can contest before the Probate Court the probate or the validity of the will after the expiration of one year from such probate. We do not think it would be proper for us to express an opinion upon this point in this case. Our opinion upon that point, whatever it might be, could have no effect in determining the case before us. Where a case is sent back for a new trial, it may be appropriate, though not strictly necessary for the decision of the question of a new trial, to give an opinion upon points that will arise in the Court below, and must be decided to finally terminate the case. But where such an opinion could have no effect upon the case in any stage of it, and was not necessary for our decision, its expression would have been not only superfluous, but, as we think, injudicious. It is doubtful if such an opinion would control the action of another tribunal in another case, or be operative as a judgment in our own Court. The law upon a question does not become settled by the mere opinion of Judges unnecessarily expressed, but only by a decision of the point when being the ground, or at least one of the grounds, of a judgment.

These reflections are also applicable to another point upon which a decision is asked, to wit: Whether the Law of 1862, giving jurisdiction to the District Courts to set aside a will and the probate

thereof in certain cases, can have a retroactive effect. This question does not affect this case.

Another point, whether, under the effect of the Law of April 19th, 1856, relative to escheated estates, the State was prevented from proceeding for an escheat before the lapse of five years, might in one aspect of the case have been considered by us, but its decision in favor of the plaintiff would not have obviated the necessity of the decision we did make, nor do we see that its decision now would have the effect to end the litigation in this case.

Rehearing denied.