[No. 370.    January 23, 1890.]

## WILLIAM BENT, PLAINTIFF IN ERROR, v. GUADALUPE THOMPSON ET AL, DEFENDANTS IN ERROR.

WILLS—SEC. 1823, COMPILED LAWS, N. M. 1884—COMMON LAW—STATUTES RELATING TO PROBATE COURTS, AND PROBATE OF WILLS—ACT, 1889.— By section 1823, Compiled Laws, 1884, adopting the common law in 1876, as the basis of jurisprudence for the territory, it was not intended thereby to repeal the statute laws, but only to adopt so much of the common law as did not conflict therewith. Browning v. Est. of Browning, 3 N. M. (Gil.) 675. The statute laws in relation to probate courts, and defining the manner in which wills should be probated in this territory, remained in force until modified by the act of 1889, and were the basis and authority of our probate courts.

ID.—PROBATE OF—CIVIL LAW, SCHMIDT'S LAWS OF SPAIN AND MEXICO, ART. 1019—KEARNEY CODE, SEC. 1365, COMPILED LAWS, N. M.—By the civil law, which was in force prior to the conquest, and which in many respects remained in force for many years after the treaty of cession, and also by chapter 15 of the laws by Pedro Murillo Velarde, relating to the probate of wills, which were also in force before the cession, and which were continued in force by the Kearney Code, section 1365, Compiled Laws, no provision is made for notice, by publication, or otherwise, to heirs, or other interested parties, to be present at the probating of a will. Only the witnesses to the will are to be summoned, and any person having possession of the will may present it for probate. Only one form of probate is prescribed to render it valid.

ID.—RE-PROBATE OF—LIMITATION OF ACTIONS AS TO INFANTS—SECS. 1869,
1881, COMPILED LAWS, N. M. 1884.—The statutes of the territory have
fixed a time within which an infant must assert his rights after at-
taining his majority and unless he does so within the prescribed
period he will be deemed to have waived them. The time prescribed
is one year, except when real estate is involved, in which case the
period is extended to three years. A proceeding by an infant heir to
re-probate a will, commenced four years after his becoming of age is,
therefore, barred. Compiled Laws, 1884, secs. 1869, 1881.

ERROR, from a judgment in favor of defendants,
to the First Judicial Court, Taos County. Judgment
affirmed.

The facts are stated in the opinion of the court.

CALDWELL YEAMAN, WELLS, McNEAL & TAYLOR
for plaintiff in error.

The probate court had jurisdiction to entertain and
allow the petition.

By the laws of New Mexico in force at the time of
the death of Alfred Bent, the petitioner and his infant
brothers were the direct heirs of the ancestor, and suc-
ceeded to all his property rights. Comp. Laws, chap.
4, secs. 1, 2, p. 44.

At common law two forms for the probate of wills
were recognized: The first, known as the probate in
common form, where the executor presents the will
before the judge or ordinary, and in the absence of
parties interested, and without citing them, produces
witnesses to establish the will (1 Wms. Ex'rs. [6 Am:
Ed.] 325), and the second, in solemn form or per testes,
where the widow and next of kin are cited to be present
at the probate of the will and to examine the witnesses
and those propounding the same. Id. 333.

Where the probate was made in the common form,
the heirs or any person having an interest were entitled
at any time within thirty years to cite the executor to
make proof of the will in solemn form. Id. 334.

And this right of the next kin was so highly re-
garded that it was held to be a matter of common right.
Id. 336.

In the American states the probate of the will of a decedent is generally regulated by statute. In those states where probate in common form is permitted, the provision of the common law requiring a subsequent probate in solemn form, on petition of the heir, is recognized. Noyes v. Barber, 4 N. H. 412; George v. George, 47 Id. 44; Brown v. Gibson, 1 Nott. & McC. 326; Randolph v. Hughes, 89 N. C. 429, citing the words of Sir John Nichols in Bell v. Armstrong, 2 Eccl. Rep. 139. Also Ralston v. Telfair, 1 Dev. and Bat. 482; Ethridge v. Corprew, 3 Jones, 14; Hamberlin v. Terry, 7 How. (Miss.) 143; Wall v. Wall, 30 Miss. 96; Cowden v. Dobyns, 5 Sm. & M. 82; Garner v. Lansford, 12 Id. 558; Hubbard v. Hubbard, 7 Oregon, 44; Sowell v. Sowell, 40 Ala. 243, citing Roy v. Seigrist, 19 Id. 810; Stapleton v. Stapleton, 21 Id. 587, Bradley v. Andress, 27 Id. 596; Lovett v. Chisholm, 30 Id. 88; Roby v. Hannon, 6 Gill. 463; Clagget v. Hawkins, 11 Md. 386. See, also, Walker v. Perryman, 23 Ga. 317; Lively v. Harwell, 29 Id. 508; Rogers v. Winton, 2 Humph. (Tenn.) 178; Gibson v. Lane, 9 Yerg. 475, citing Satterwhite v. Satterwhite, 1 Eng. Con. Ecc. 151, 425; Burrow v. Ragland, 6 Humph. 481; Lomax on Wills; 3 Redf. on Wills, chap. 1, sec. 3; Schouler on Ex'rs, secs. 67–70.

"It is laid down by Godolphin that the probate of a will in common form may be reexamined at any time within thirty years after such probate." Noyes v. Barber, 4 N. H. 412. See, also, Brown v. Gibson, 1 Nott. & McC. C. 326; Claggett v. Hawkins, 11 Md. 387.

It appears that the petitioner in this case had come to his majority less than three months prior to the initiation of his petition. But if he had been of full age at the time of the probate, if he had accepted a legacy thereunder, this still would have been no bar. 1 Wms. Ex'rs, 336.

The proceeding by petition and citation to the ex-

ecutor and terre-tenants was the proper proceeding. Equity has no jurisdiction either to allow or revoke the probate of a will. In re Broderick's Will, 21 Wall. 503.

The only process open to the heirs was by petition in the probate court. This was the form of proceeding adopted in every one of the American cases cited, and it was the form prevailing in the English courts. Cowden v. Dobyns, 5 Smedes & M. 90; and also countenanced in the supreme court of the United States. McArthur v. Scott, 5 Sup. Ct. Rep. 670; Sup. Ct.; 113, U. S. 340.

FRANK SPRINGER, CATRON, KNAEBEL & CLANCY for defendants in error.

The probate court has no jurisdiction to entertain the petition. All the cases cited by plaintiff in error to sustain the jurisdiction are common law authorities, and have no application to this case. Comp. Laws, N. M. 1865, chap. 2.

Section 1823 of Compiled Laws, 1884, was enacted in 1876, and this court has held that the common law was not in force prior to that time. Browning v. Browning, 9 Pac. Rep. 677. However, it does repeal the special statutes as to testaments, which reappear in title 20, Compiled Laws, 1884.

Chapter 15 of the laws by Pedro Murillo Velarde, which treats of the validation of wills, provides that any person having an interest in the estate may ask to have a will approved, but contains no provision requiring the citation of heirs, nor for the re-probate of a will, and our statutes are equally silent.

Section 17, chapter 3, Compiled Laws, 1865, shows what our laws require, and the record made by the probate court in this case, more than twenty years before the petition was filed, shows that the law was complied with. Comp. Laws, 1884, sec. 1393.

The petition in this case is barred by the statute of limitations.    Comp. Laws, 1884, secs. 1863, 1869.

The statement in the brief of counsel for plaintiff in error that "the petitioner had come to his majority less than three months before the initiation of his petition" is erroneous.    Counsel were doubtless misled by a mistake of the printer in substituting "1887" for "1883." Reference to the  original transcript on file will show the error.

The judgment of the probate court is beyond its jurisdiction.    Comp.  Laws,  1865,  chap.  6,  sec.  9; Comp. Laws, 1884, sec. 1446.

McFIE, J.—This is an action originating in the probate court of Taos county, wherein William Bent seeks a re-probate of a will probated in the year 1867 as the will of Alfred Bent, his father.    In his petition, which was filed in said court on the twelfth day of August, A. D. 1887, William Bent alleges, in substance, that his father, Alfred Bent, died December 9, 1865, leaving as his sole heirs at law his widow, Guadalupe Bent, now the wife of one George W. Thompson, Charles Bent, William Bent, also known as Julian Bent, and Alberto Silas Bent, all of said children being infants; that letters of administration were granted to said Guadalupe Bent upon said estate, April 12, 1866; that on the sixth day of March, 1867, his mother, Guadaluge Bent, presented to the probate judge of said county, and had probated, a will, alleging it to be the will of Alfred Bent, and that neither he nor his brothers were notified, or were present, when said will was probated.    The petitioner further alleges, on information and belief, that the will probated was not the will of his father, but says that, if it was, the testator was of unsound mind when it was executed; that the witnesses named were not present at the making of the will, nor were they examined when said will was pro-

bated.   He alleges that the Maxwell Land Grant Company and the Maxwell Land Grant & Railway Company have or claim some right or interest in the premises, and prays that citation may issue requiring said Guadalupe Bent, now Thompson, to appear and make solemn proof of said will, and that Charles Bent, Alberto Silas Bent, and the above named companies, be cited to be present and hear said proofs.   A copy of the will is attached, and is as follows:

"In the name of God, Amen.   I, Alfred Bent, being of sound mind and memory, and knowing the uncertainty of life and the certainty of death, do hereby devise and decree as my last will and testament, in presence of the subscribing witnesses, as follows, to wit:   First.   I give and bequeath unto my wife, Guadalupe Long Bent, for the maintenance of her and my three children, Charles, William, and Silas Bent, all of my real and personal property, money, goods, and effects, after my just debts have been paid, which are as follows, to wit:   To North & Scott, of St. Louis, the sum of five hundred and sixty-nine dollars, with interest; to Mrs. S. Beuthner and L. B. Maxwell, sixty dollars; to David Webster, the sum of four dollars—which debts I desire shall be paid.   I desire that my said wife shall be my executor, and may join with her, if necessary, any person who may desire for her benefit, and that of my children, heirs as aforesaid.   In testimony whereof I have this sixth day of December, A. D. 1865, subscribed my name, in the presence of subscribing witnesses.   Codicil.   The debt due North & Scott, of the city of St. Louis, is jointly due by myself and Horatio Long, of Colorado territory.

"ALBERT BENT.

"Witnesses:   FERNANDO MAXWELL,
"W. A. KITTRIDGE,
"JAS. S. HURST,
"CHARLES HART."

Citation issued August 12, 1887, returnable September 5, 1887.

On the opening of court on the fifth day of September, 1887, T. B. Catron, attorney of defendant companies, appeared in behalf of said companies, and filed a written protest and motion to dismiss the cause for numerous reasons, in substance, that the will had been probated more than twenty years in the same court, and could not be re-probated; that the court had no jurisdiction; that the proceeding was barred by limitation; that there was no law authorizing the re-probate of the will; and that the proceeding was barred by reason of laches and unreasonable delay. The court overruled the motion, and, after hearing testimony, entered judgment declaring the former probate of the will illegal, and annulling the record of same, on September 7, 1887. From said judgment an appeal was taken by defendant companies to the district court for Taos county, where, at the November, 1887, term thereof, the following motion was made and allowed, dismissing the cause, and declaring said proceedings of the probate court at the September term, 1887, in regard to the probate of the will of Alfred Bent, null and of no effect. The motion was as follows:

"Now comes the Maxwell Land Grant Company, and the Maxwell Land Grant and Railway Company, and move the court to declare null and of no effect all of the proceedings contained in the record had by the judge of the probate court of the county of Taos at the September term of said court, with reference to the reprobate of the will of Alfred Bent, and especially the part of said record declaring said will not to be the last will of Alfred Bent. (1) Because the same were not had in conformity with the provisions of an act of the legislative assembly of the territory of New Mexico approved January 26, 1861, entitled 'An act amenda-

tory of the law of testaments,' and being sections 1446, 1447, 1448, and 1449 of the Compiled Laws of 1884. (2) Because said probate judge and court rejected and in effect declared said will of Alfred Bent null and contrary to law. (3) Said probate court and probate judge declared said will of Alfred Bent null and void, under the pretext of want of solemnities prescribed by law for making wills. (4) Because said probate judge did not return said will to the person who may have applied for the approval thereof, either said William Bent or Guadalupe Thompson or any other person, nor did he note at the foot of said document the positive reasons on which he founded any opinion why he refused to approve said will. (5) Said will has not been presented to the district court by any person to whom the same has been returned, nor has the same been returned to any one whoever. (6) Because neither the probate court nor the probate judge had jurisdiction to entertain the said petition, or grant the prayers thereof. (7) Because neither said probate court nor said probate judge could inquire into the validity of the acts of the probate court or the probate judge, done at a regular term of the probate court, more than twenty years prior to the filing of said petition of William Bent. (8) Because neither said probate court nor said probate judge had any authority or right to review the action of his predecessor, or of the probate court done in regular term, over twenty years before the application. (9) Because said will was made and executed and approved before the common law came in force in this territory, and there was no law in force at the time of making, executing, and probating of said will allowing a re-probate thereof. (10) Because the laws in force at the time of the making and execution of said will and the death of the testator did not provide for or permit any re-probate. (11)

Because said petitioner has been guilty of laches, and has not made his application in due and lawful time. (12) Because said proceedings are illegal and void, and unauthorized by law. (13) Because the proceedings declaring said will not to be the will of Alfred Bent, deceased, are illegal and contrary to law, and not in the jurisdiction of the probate judge or probate court, and these respondents especially pray the court to declare the same null and void. (14) The record shows that neither the probate court nor the probate judge made any investigation as to the validity of said will, although it appears the witnesses, or some of them, had been before him at the same term in the matter of said petition. (15) Because said record is in other respects vague, uncertain, and insufficient, and not in accordance with law.

"CATRON, KNAEBEL & CLANCY,
"Attorneys for said Companies."

To reverse this judgment the cause is brought to this court.

It is insisted by defendants in error that there is an error on the first page of the printed record, in that the date when William Bent arrived at his majority is stated to have been "May 31, A. D. 1887." They insist that it should have been "May 31, A. D. 1883." The plaintiff in error assumes the correctness of the record by basing an argument upon its correctness, and it becomes important for the court to know which is the correct date. An inspection of this record discloses the fact, to our satisfaction, that the date "1887" is an error, and should be "1883." It will be observed that on page 10 of the record, where the petition is again set out in full, the date is given as "1883," and the ages agree with the order in which the names are given in the will. These considerations, it is true, may not be conclusive; but when added to these is the

admission in the petition that plaintiff in error's father died December 9, 1865, all doubt is removed, as petitioner makes the further admission that he was living when his father died, thereby showing that "1887" can not be the correct date. From this it will be seen that the petitioner had arrived at his majority more than four years prior to the commencement of this suit in the probate court. The certified record shows the conclusion above to be correct.

Plaintiff in error cites numerous authorities to the effect that under the English common law two forms of probating a will were recognized, namely, the common and solemn forms. The common form required no notice to the heirs or interested parties, while the solemn form required such parties to be cited to appear; and, where a will had been probated in common form, any interested party could appear, and have the will re-probated in solemn form, at any time within thirty years. Such was the practice in the ecclesiastical courts, which were in fact the probate courts of England. Plaintiff in error also refers to several of the state courts' maintaining the double form of probating a will, but an examination of these authorities shows that the courts of those states were either governed by the common law, or by special statute regulating the practice. Plaintiff in error assumes that the rules of the common law govern this case, as it will be observed that the petition demands a re-probate of the will in solemn form, and authorities cited are all in support of that view; while the defendants in error contend that the probate of a will in this territory is a purely statutory proceeding, and that the laws of this territory do not recognize the double form of probating wills prescribed by the common law, nor require notice to heirs or legatees. Let us therefore examine this subject with a view to determine what law governs this case.

The civil law was undoubtedly in force prior to conquest and the treaty of peace between the republic of Mexico and the United States, and in many respects remained in force for many years afterward. The Laws of Pedro

PROBATE of wills: civil law: sec. 1365, Comp. Laws.

Murillo Velarde, in relation to the execution and proving (or probating) of wills, and administration of estates of decedents, dating back to 1790, were also in force, and were continued in force by specific provision of the Kearney Code in 1846. Comp. Laws, N. M. 1865. Under the civil law, the only provisions made for proving a will (which is equivalent to probating) are as follows: "In order that an open testament, made before witnesses without a notary, can have effect, it must be declared valid by the judge. For the purpose of obtaining his sanction, anyone having an interest in its disposition may apply to the judge, who must summon the witnesses present at the execution of the testament; and, upon his finding that it has been truly made, he shall declare it a valid testament, and order it to be inscribed in the registers of some notary." Schmidt, Laws Spain and Mexico, pp. 214, 215, art. 1015.

In regard to a close or sealed will, the provision is as follows: "When the testator is dead, the person believing himself heir or legatee must apply to the judge to have it opened. Thereupon the judge must order the person who has possession of the testament to bring it before him, and, having summoned the witnesses, exhibit it to them for the acknowledgment of their signatures. When such acknowledgment has been made by all the witnesses, or at least four of them, if the others can not be had, he shall proceed to open the testament." Partidas, lib. 3, tit. 2, p. 6; Schmidt, Laws Spain and Mexico, art. 1019. These laws, it will be observed, do not provide for notice, by publication or otherwise, to heirs or interested parties to be present

at the probating of the will; only the witnesses to the will are to be summoned. Any interested party or person having possession of the will might present the same for probate; and there is but one form of probate recognized, so far as we have been able to discover. The Laws of Pedro Murillo Velarde are almost identical, and provide: "Chapter 15.—Of the Sealed Testament, and the Proving of the Nuncupative Testament not Made Before a Notary.—The testator who has executed a sealed testament being dead, the heir named, the legatee, and the executor may ask that it be opened, with the intention that such disposition be declared valid, or the child omitted, or unjustly disinherited, and the heirs ab intestato, with the intention that it be declared void; wherefore, anyone who may be interested may ask it, swearing that he does not do so in bad faith, but under the presumption that he has, that he is interested. This petition should be made to the regular secular judge, and in it be expressed that the testator died under this disposition, and the judge shall direct that it be brought immediately, in order that it be opened; and, it being in another place, he will set a time for him who may have it, in order that he may present it; and if he be contumacious, he shall pay to him who shall demand it the legacy which may be left to him in the testament, and the damage that his contumacy may cause him. Before proceeding to the opening, the judge shall require that the instrumental witnesses identify in his presence their signatures, that of the testator, and the sealed envelope which may inclose the testament, and that they depose as to the decease of the testator, because they may have heard of it or seen it; and, not knowing it, the notary shall certify to it, because he has seen it, giving certificate of identity, or because he was told of it in his house or neighborhood; because, before the death be proved the opening can not be proceeded with. If the witnesses

are dead, or are absent without their whereabouts being
known, information shall be given of it, that at the
time of the execution they lived and were at the place,
and that they were persons who could testify; and the
same as to the legality of the notary before whom it
was executed, if he should be dead; and, if there should
be anyone who may know their signatures, he shall
identify them, or they shall be proved. But if the wit-
nesses are alive, and can not all be had, it will be suffi-
cient that the majority of them appear; and if this
can not be done, and the judge should understand that
to omit the opening there might result damage to the
parties in interest, he may call responsible men, and
before them open the testament, have it copied and
read, and, the responsible men signing it, have it closed
and preserved, in order that, when the instrumental
witnesses present themselves, they may recognize it in
the prescribed form. If it should not be opened before
the notary who witnessed its execution, he should
acknowledge his signature and signet. The identifica-
tion being made by the witnesses, and the envelope not
being torn or erased, nor being suspicious by reason of
any other cause, the judge shall have it opened in the
presence of the notary and witnesses, and reading it
first to himself in case the testator should direct that
any part should not be read or published until a certain
time, in which he should accede to his wishes, he will
have it read and published in the presence of all;
directing that it be made a public document, to which
end it shall be filed in the records of the notary before
whom it is opened, and to the rest (a copy) of the
clause which relates to them, with the beginning and
end of the testament. If the testamentary disposition
should be written on common paper, but before the
competent number of witnesses, the heir or executor
shall apply to the judge presenting it to him; stating
(the name of) the person who wrote it, that which

passed at that time, the reason why it was made so, and without the presence of a notary, and that the testator died under it; and asking that, after taking the declaration of the witnesses and the acknowledg-ment of their signatures, that that disposition be declared a nuncupative testament, that there be given the proper copies to the parties in interest, and that it be filed in the record of the notary. The judge shall direct that the information be received, and, it being done, he shall proceed accordingly. If the testator manifested his will by word alone before the legal num-ber of witnesses, the same proceedings shall be had, omitting, of course, the presentation of the common paper, which does not exist, and asking that the depo-sitions of the witnesses may be declared to be the testa-ment of the deceased."

Under these laws, any person interested could have a will probated without notice to the heirs, or other interested parties. Only witnesses were required to be summoned, only one form of probate was prescribed, and yet the will would be declared valid. By the Kearney Code, the Velarde Laws in relation to wills and estates were continued in force. "The laws here-tofore in force concerning descents, distributions, wills, and testaments, as contained in the treatises on these subjects, written by Pedro Murillo de Lorde (Velarde), shall remain in force so far as they are in conformity with the constitution of the United States, and the state laws in force for the time being." Comp. Laws, N. M., sec. 1365. The probate courts were given exclu-sive jurisdiction over the probate of wills, and the con-testing thereof. Appeals were allowed from the pro-bate to the district courts in the same manner as from the district to the supreme courts. Appeals from the district to the supreme court were allowed, if taken dur-ing the same term at which judgment or decision was rendered, if during the same term appellant or his

agent should file an affidavit of merit, and bond. By
section 17 of the act of January 12, 1852 (Comp. Laws
N. M., sec. 1393), it was provided that "probate judges
in their respective counties are authorized to qualify
wills, by receiving the evidence of the witnesses who
were present at the time of making the same, and all
other acts in relation to the investigation of the valid-
ity thereof." The word "quality" is equivalent to the
word "probate" in the above section, and is intended
to convey the same meaning. By the act of January
26, 1861 (Compiled Laws, secs. 1446–1449), it was
provided: "No judge of probate shall have the power
to declare any will, codicil, or any other testamentary
disposition to be null and void, under the pretext of
the want of the solemnities prescribed by the laws of
this territory by the testator making such disposition."
Then follow three sections of the same act, which pro-
vide, in substance, that when a will is presented for
probate, if the probate judge has any doubt as to
whether he should approve the will or not, or "if, in
the judgment of such judge, the will offered for pro-
bate does not merit his approval," he shall return the
will immediately to the person who presented it for
probate, noting on the foot of the will his reasons for
refusing approval. The third section of the act then
provides that it shall be the duty of the person to whom
the will is returned to present the same at the next
regular term of the district court of the county, and it
is made the duty of the district court to examine into
the matter, declare by its decision whether it is valid
or null and void, and then return the will to the party.
There is a proviso in the last section of this act which
reads as follows: "That any proceedings had by said
judges of probate, not in conformity with the provi-
sions of this act, shall be declared null and of no effect
by the district court, and all at the cost of the said pro-
bate judges."

This was the state of the law of this territory at the time the will in this case was executed and probated, and at the time of the death of the testator, Alfred Bent. This court has decided that the common law was not introduced into this territory by the organic act, except in a very limited degree. Browning v. Browning, 3 N. M. (Gil.) 659. And even in 1876, when the common law was formally adopted as the basis of our jurisprudence, it was the common law "as recognized in the United States" that was adopted. For the reason that the common law of one state is not necessarily common law in another, as each state adopts such parts as are suitable and desirable, this court, in the case of Browning v. Browning, supra, took occasion to declare the scope of the common law as adopted in 1876, as follows: "We are, therefore, of opinion that the legislature intended by the language used in that section to adopt the common law, or lex non scripta, and such British statutes of a general nature not local to that kingdom, nor in conflict with the constitution or laws of the United States, nor of this territory, which are applicable to our condition and circumstances, and which were in force at the time of our separation from the mother country." By the adoption of the common law in 1876, it was not intended thereby to repeal our own statute laws; only such portions were adopted as did not conflict with our laws. Our statute laws governing probate courts, and defining the manner in which wills shall be probated in this territory, remained in force, until modified by the act of 1889, and were the basis of the jurisdiction and authority of our probate courts. The probate of a will in the manner prescribed by the statute is conclusive, and must be recognized and admitted in all courts as valid so long as such probate stands. The courts of California have so held in

*[margin note:]* COMMON LAW: ACT 1889, RELATING TO PROBATE COURTS.

numerous cases. A leading case from that state on the subject is that of State v. McGlynn, 20 Cal. 233.

The will in this case, as shown by the record, was probated as required by law by petitioner's mother, who was an interested party, more than twenty years prior to the filing of the petition in the probate court in this case; and the record also shows that the petitioner delayed more than four years after attaining his majority before he filed his petition. The record of the proceedings of the probate court on March 6, 1867, in reference to the probating of the will, is as follows:

Re-probate of will; limitation as to infants on attaining majority.

"Don Fernando de Taos, N. M.

"Wednesday, the sixth day of March, 1867, at ten o'clock in the forenoon the court met. Present: The Hon. Pedro Sanches, judge of probate; Leandro Martinez, clerk, and Pablo Martinez, deputy sheriff. The order of business is as follows: The administrators of the estate of Alfred Bent, deceased, presented the will of said deceased for approval. The court examined said will, and the witnesses in it mentioned, and, finding it correct according to law, approved it, and ordered that it be recorded in this office."

The will, being probated and recorded, became the foundation of title to both real and personal property, and became admissible in evidence in all courts in support of such title. Castro v. Richardson, 18 Cal. 478. The probate courts of this territory are courts of record, so far as the probating of wills is concerned, and their jurisdiction is original and exclusive in the first instance. Here, then, we have a case in which the record discloses a valid judgment of a court of record, standing without appeal and unreversed, for the period of more than twenty years. The petitioner now seeks to have this judgment set aside and declared void, for such would be the effect of sustaining this proceeding. To avoid the effect of his failure to proceed through

his next friend to have this judgment set aside, he sets
up his minority as a justification.   This is a.substantial
plea, but it does not last always.   Courts of law are,
and should be, anxious to settle titles, rather than dis-
turb and unsettle them; and a failure to fix a time
when an infant, after arriving at his majority, shall be
held to have waived his rights, if he fails to assert
them, would result in destroying confidence in the titles
to our property, and injuriously affecting substantial
rights.   Therefore a majority of the states and terri-
tories in this country have by statute fixed a time within
which an infant must assert his rights, or be deemed
to have waived them.   In almost every instance is
allowed one year after the removal of his disabilities,
and such is the period fixed by our statute, except as to
real estate, in which case the period is extended to
three years.   Comp. Laws, 1884, secs. 1869, 1881.

The petitioner proceeds upon the theory that he
has thirty years under the common law to have this will
re-probated in solemn form; such seems to be the con-
tention of plaintiff in error in his brief.   We are unable
to agree with him in this respect, but, on the contrary,
hold that this case is governed by the statute law of the
territory.   In this case, therefore, petitioner did not
commence his action within the time allowed by law,
even if it is admitted that the action related to the title
to real estate. · More than four years were allowed to
elapse, and, in view of the statute, any legal right that
he might have asserted within the proper time must be
held to have been waived, and it follows that petitioner
had no standing in court at the time he brought this
proceeding.   The probate court entertained the peti-
tion, overruled the motion to dismiss, and recorded a
judgment annulling its former judgment.   This record
of the probate court was brought by appeal before the
court below.   The motion to dismiss and annul the
proceedings of the probate court was based on jurisdic-

tional grounds, which the record discloses. It was, in substance, that, by reason of laches and unreasonable delay disclosed by the record, and in the absence of statutory authority, the court had no power or jurisdiction to act. Laches did not exist within the time fixed by the statute, but after that time there were both laches and unreasonable delay, in law, such as would render it improper for the court to attempt to set aside its former judgment, or grant the petitioner any relief whatever. We are of the opinion that, at the time this proceeding was brought in the probate court, the former judgment of that court had become conclusive, so far as this petitioner was concerned, and could not be reopened or annulled by that court. This court has held in the case of Browning v. Browning, above cited, that the act of 1880, relating to the limitation of actions, in force at the time of the commencement of this proceeding, is applicable to the probate courts of this territory, and it is applicable, therefore, to this case. Comp. Laws, N. M., secs. 1869, 1881. The only errors assigned are that the court erred in dismissing the proceeding, and entering judgment as shown by the record; but we are of the opinion that the court had the power to do so, and exercised it properly in the action taken. Therefore, the judgment will be affirmed, with costs.

LONG, C. J., and WHITEMAN and LEE, JJ., concur.